[Civ. No. 1827.   Third Appellate District.—October 14, 1918.]

GLADYS WHITE, Respondent, v. MABEL C. DEERING, as Executrix, etc., Appellant.

ESTATES OF DECEASED PERSONS—ACTION ON CLAIM FOR SERVICES—LEGACY TO CLAIMANT—ELECTION.—In this action against an executrix to recover the amount of a claim for services rendered by the claimant to a decedent as nurse, housekeeper, and secretary, it is held that the claimant was not required to make election between her claim and certain property bequeathed to her by codicils to the will of the testatrix, the bequests being unconditional and unqualified.

ID.—BEQUEST IN LIEU OF RIGHT OR INTEREST—INTENTION.—To justify the conclusion that a bequest is intended by a testatrix to be in lieu of some other legal right or interest of the beneficiary in the estate of the deceased, the expression of that intention must not only be in language clear and unmistakable, but such intention must be entirely gathered from the testamentary instrument itself whereby the bequest is made.

ID.—BEQUEST TO SERVANT—PRESUMPTION.—In the interpretation of bequests to servants, the true rule is that the presumption is that they are not made in lieu or satisfaction of compensation due to the servant from the testator, unless there is language in the testament itself from which no other conclusion is permissible.

ID.—EVIDENCE—LETTER FROM TESTATRIX—INADMISSIBILITY OF.—In this action, a letter written by the testatrix to her executrix, though entirely in the hand of the testatrix, was properly excluded, when offered for the purpose of showing the intention of the testatrix, since not being testamentary in character, it was wholly inadmissible for the purpose either of explaining or qualifying the effect of the bequests made in the will, and would be for such purpose hearsay and self-serving, and, having been written nine months after the execution of the codicils containing the bequests, it would not be admissible under the rule of *res gestae.*

APPEAL from a judgment of the Superior Court of Sacramento County.   Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

White, Miller, Needham & Harber, and Myrick & Deering, for Appellant.

C. E. McLaughlin and C. P. McLaughlin, for Respondent.

HART, J.—Sophia P. Comstock, a resident of the county of Sacramento, died on the thirty-first day of July, 1915, leaving a last will and testament, of which, after due proceedings, defendant, Mabel Deering, was appointed and qualified as executrix. In due time plaintiff presented to said executrix her claim against said estate for "services as nurse, housekeeper and secretary, requiring constant service during the day and night, from December 12, 1913, to and including July 31, 1915, $1,963," which said claim was by the defendant rejected, and this action was brought to recover thereon. The case was tried before a jury and a verdict was rendered for the amount sued for. From the judgment in favor of plaintiff, which followed the verdict, defendant prosecutes this appeal.

A codicil to the will of Miss Comstock, dated April 17, 1914, contained the following provision: "I also give to Miss Gladys White my piano, my books and my Haviland china." In another codicil, dated April 24, 1914, was the following provision: "I give to Miss Gladys White in addition to the personal articles given to her by a previous codicil my fifty shares of Arcade Park stock or the sum of one thousand five hundred dollars as she may elect. If the shares are sold in my lifetime I reserve the right to re-determine the amount to be given to Miss White."

At the commencement of the trial, but before the jury was selected, counsel for defendant stated that they expected to show, both by written and oral declarations made by Miss Comstock, that she intended the legacies in her will in favor of the plaintiff to be in full compensation and in full payment for her services, and requested the court to require the plaintiff to elect whether she would proceed with the trial or would accept the legacies in full payment for her services. The court refused to require the plaintiff to elect and a jury was selected. Before the introduction of any evidence defendant renewed the motion to require plaintiff to elect, which the court again refused to do. The action of the court in this respect is assigned as error.

The codicils to the will of the testatrix, whereby she gave to the plaintiff certain specified personal property and certain designated shares of stock, are in unambiguous language. They involve a plain and unmistakable expression of the

intention of the testatrix to give and bequeath to Gladys White the "piano, my books and my Haviland china," and in addition thereto "fifty shares of Arcade Park stock" or the sum of one thousand five hundred dollars in lieu of said stock, as the legatee may elect. The terms of the codicils are unconditional and unqualified. In other words, the bequests therein and thereby made to the plaintiff are in terms absolute and unqualified. There is absolutely no language therein from which it may even remotely be inferred that the testatrix intended that the bequests so made were to stand in lieu of any compensation which might become due to the plaintiff for any personal services which the latter might have rendered for the deceased during her (testatrix') lifetime. To justify the conclusion that a testamentary bequest of money or other personal property is intended by the testator to be in lieu of a debt or some other obligation due from the testator to the legatee, or in lieu of some other legal right or interest of the beneficiary in the estate of the deceased, the expression of that intention must not only be in language so clear and unmistakable that there can be no reasonable ground for doubting that such was the intention, but such intention must be entirely gathered from the testamentary instrument itself whereby the bequest is made. The authorities expounding and applying the rule as it is thus stated are numerous, but we shall content ourselves by the mere citation of a few of our own cases, as follows: *Estate of Gray*, 159 Cal. 159, [112 Pac. 890]; *Estate of Cowell*, 164 Cal. 636, 642, [130 Pac. 209]; *Estate of Prager*, 166 Cal. 450, [137 Pac. 37]; *Estate of Whitney*, 171 Cal. 751, 760, [154 Pac. 855]; *Estate of Wickersham*, 138 Cal. 355, 363, [70 Pac. 1076, 71 Pac. 437].

It follows from the foregoing views that the case presented here is not one in which a legatee or beneficiary under the terms of a last will is required to make an election as to which of two alternative provisions of such an instrument bequeathing or devising certain portions of the estate of the testator to him he intends to rely on.

The only other point urged by the appellant here arises over the refusal of the trial court to allow the defendant to introduce in evidence, against the objection of the plaintiff, a letter written by the deceased to the defendant, executrix, and dated January 24, 1915, some nine months subsequently

to the making of the codicils above referred to. The theory upon which said letter was offered in evidence was that, being entirely in the handwriting of the deceased, it practically amounted to a will or a codicil to her will, and that it would show that the intention of the testatrix, as to the bequests made to the plaintiff in the two codicils above mentioned, was that said bequests should stand in lieu of compensation for any services performed for the testatrix by the plaintiff. The letter reads:

"Dearest Mabel: The other day Mr. Carly said in the presence of Gladys that I should will her my home place; that I owed her this. This I *do not wish.* Dear Gladys has been lovely to me, but after all she is an inexperienced girl, and I have suffered for care. Dear Gladys does all that she knows how to do, but she often neglects me. She does what she wishes, not what I wish; and of course I can say nothing. When she came to me, I told her I had no money with which to pay her for her services, but that I would give her my piano, my books and my dishes. She said she wanted nothing, not even what I offered her and that her only desire was to take care of me and restore me to health. I have provided for her in my will. The most of my money, as you know, it is my greatest desire, shall go to leave a monument *great* and *beautiful* in honor of my mother and to last for hundreds of years.

                       "Sophia P. Comstock.

"Please never mention this in your letters. Gladys usually reads everything I write to you and always reads your letters.
                       "S. P. C.

"If Gladys knew I sent you this she would punish me severely. This is proof enough of my desire. Save this letter."

We think the ruling excluding the letter as evidence of the intention of the testatrix with respect to the scope of the bequests made to the plaintiff in her will should be sustained.

Obviously, the only theory upon which the letter could be held to be admissible for the purpose for which it was offered is that the letter was in legal effect a testamentary instrument or intended by the testatrix as a part of her will. To give an instrument the effect of a last will, holographic in form, such as is the letter referred to, if anything in the

nature of a testament, where there exists a previously made and unrevoked will of the testator, such instrument should be so phrased that there can be no doubt from its language that the intention of the testator was thus to make further testamentary provisions regarding the disposal of his estate— either that it was to explain, qualify, or modify certain provisions of his previously made will, or to make a different disposition of a part of his estate from that made of it in the original testament.

The letter in question is not free from uncertainty or ambiguity as to its meaning and purpose. It is, for instance, reasonably susceptible of the interpretation that what was uppermost in the mind of the testatrix, when writing the letter, was the proposition suggested by the Mr. Carly mentioned in the writing, in the presence of the plaintiff, that she (testatrix) "should will her [referring to plaintiff] my house," which the testatrix expressed in the letter a disinclination to do—not in positive terms, but in a manner indicating that she was in more or less doubt as to whether she should do so or not, her language being, "This I do not wish." In this view of the meaning and purpose of the letter, it is, therefore, reasonably probable that by the concluding words of the letter, viz.: "This is proof enough of my desire," the testatrix had reference to her "desire" that the plaintiff should not receive or be given the house of the testatrix. Under this construction of the letter, the sole purpose of the testatrix in writing it and the thought which thus she intended to express were to enter a protest with her friend against giving to the plaintiff her house when she had already made provision for her in her testament, then existing. But it may be conceded that the letter is capable of a different construction, and herein lies the insuperable difficulty which confronts the appellant in attempting to support the theory upon which she insists that the letter constitutes competent evidence of the intention of the testatrix with respect to the effect it is supposed to have on her bequests to the plaintiff; for thus it becomes clear that the writing is so obscure and uncertain as to its true meaning and purpose that it would require an overstraining of the imagination or much linguistic juggling to make out of the letter a testamentary instrument or justly to say that the writer intended thereby to subject to the right of the plaintiff to receive the bequests

provided for her in the will to the condition that she would waive all claim to any and all compensation to which she might be entitled for personal services rendered to the deceased in the latter's lifetime.

Again, in determining whether the letter was intended as a testamentary instrument, no little significance should be attached to the fact that the deceased had previously not only made a will in due form and according to legal requirements, but had thereafter added thereto two codicils, the sole purpose and the effect of which were to give to the plaintiff certain of her personal property. Thus, it would seem clear, the testatrix well knew that, effectively to make a disposal of her estate to take effect after her death, it was necessary for her to do so by a will in accordance with the formalities prescribed by law, and it would seem equally clear that had she intended qualifying or in any way changing the effect of her bequests to plaintiff, made under the most solemn circumstances known to the law, she would have done so either by adding a new provision to the will effecting such result, or have made an entirely new testament to take the place of that already executed by her and in existence when the letter was written.

It will not be denied that the letter, not being testamentary in character, is wholly inadmissible for the purpose either of explaining or qualifying the effect of the bequests made in the will to plaintiff. It would be for such purpose hearsay and self-serving. Nor, the letter having been written nine months after the execution of the codicils whereby the plaintiff was bequeathed a portion of the estate of the deceased, would it be admissible under the rule of *res gestae.* The cases in California are uniform upon this proposition, but in support thereof we need only to refer to *In re Gilmore,* 81 Cal. 240, 243, [22 Pac. 655]; *Estate of Tompkins,* 132 Cal. 173, 175, 176, [64 Pac. 268], and *Estate of Willson,* 171 Cal. 449, 476, [153 Pac. 927]. (See, also, Underhill on Wills, sec. 912; Roper on Legacies, 1461; *Harrison* v. *Haskins,* 2 Pat. & H. 388; *Aird's Estate,* L. R. 12 Ch. Div. 291; Civ. Code, secs. 1318, 1340.)

The further contention is made, however, that "there is a general presumption that a legacy to a servant or creditor is to be considered as a satisfaction of a debt for wages unless there are circumstances that take the case out of the rule."

The quoted language is from section 690, volume 2, of Labatt's Master and Servant, and the rule as thus stated, as the learned author of that treatise explains, is found in a few English decisions, although Lord Eldon, in *La Sage* v. *Coussmaker* (1794), 1 Esp. 188, ruled that "a legacy was never deemed a satisfaction for a legal demand when that demand was unliquidated at the time of the legacy given, nor where it was given before the time when the demand accrued, or the debt was contracted, unless it was expressly said in the will that it should be a satisfaction." There are to be found some American cases, which, like the English cases referred to by Labatt, hold that the presumption is that a legacy to a servant is to be regarded as in satisfaction of wages due from the testator to the servant. There are, on the other hand, many of our cases which have adopted and applied the rule as laid down by Lord Eldon, *supra,* and our opinion is that that is the sounder and more logical rule.

It is neither strange nor wholly anomalous that a person, in making a testamentary disposal of his estate, should give a portion thereof to friends or persons, not related to him by blood or otherwise, who had been in the lifetime of the testator in such close association and on such terms of intimacy with him as to have won his lasting love, friendship, and confidence. Even a menial servant's relations to his master usually involve the administration of matters which directly affect the latter's personal comfort and material happiness, and it is, therefore, never a matter of surprise when it develops that in his last will a master has bestowed upon his servant, though his services have been of a menial nature, some benefaction or given him a legacy solely out of consideration for his faithfulness as a servant. Hence, the books are full of cases where servants have been left legacies by their masters of far greater value than any services they had rendered, or which they were capable of rendering in the capacities in which they were employed, are reasonably worth, and from those cases it may safely be laid down as the common rule, even in those instances where the fact is not directly expressed in the testament itself, that the master thus remembers his servant, not because in his opinion the servant has not been or will not have been sufficiently compensated for his services, or not because the master thus intends to pay for the services rendered him by the servant,

but because of some sentiment of affection or personal attachment which the master has formed and fostered in his lifetime and to the end for the servant. Therefore, it seems to us that the true rule is and ought to be, in the interpretation of such bequests, that the presumption is that they are not made in lieu or satisfaction of compensation due to the servant from the testator, unless there is language in the testament itself from which no other conclusion is permissible. As above stated, this conclusion is in accord with that announced in a number of the cases in this country and by courts of eminent standing. It is sufficient to give one of these cases special notice herein.

In *Sheldon* v. *Sheldon*, 133 N. Y. 1, [30 N. E. 730], the testator, in his lifetime, had received from his wife a sum of money which she had obtained from the sale of certain real estate, of which she was the owner in her own right, upon the understanding and agreement with his wife that he should control and invest the money for her benefit, and that he should, when requested, account to her for the same and whatever increase might accrue from the investment. No such accounting was had during the lifetime of the husband, and she presented in due form her claim for the amount against the estate of her husband who died testate. The claim was rejected by the executors of the will. By his testament, the testator gave his wife a legacy of seven thousand dollars, which was paid to her by the executors of the will. On the trial of an action by the wife to recover the money due from her husband by reason of the transaction above mentioned, one of the defenses interposed was that the legacy was intended to extinguish and did extinguish said indebtedness, notwithstanding that the husband's will contained no language to that effect or indicating such to have been the intention of the testator. The trial court disallowed that defense, and the court of appeals sustained the ruling, saying: "The legacy given to the plaintiff by the will of the husband did not operate as payment. The will contains no words from which any intent can be inferred or found to extinguish any pre-existing debt by means of the bequest. It was an absolute gift apart from any debt due by the testator to his wife, and no debt is even mentioned or referred to in the will. A legacy to a creditor is not to be deemed in satisfaction of his debt, unless so intended by the testator."

Other cases, to the same effect are: *Clarke* v. *Bogardus,* 12 Wend. (N. Y.) 68; *Boughton* v. *Flint,* 74 N. Y. 482; *Phillips* v. *McCombs,* 53 N. Y. 494; *Eaton* v. *Benton,* 2 Hill (N. Y.), 576; *Williams* v. *Crary,* 4 Wend. (N. Y.) 449.

In the footnotes of Labatt's treatise the California case of *Smith* v. *Furnish,* 70 Cal. 424, [12 Pac. 392], is referred to as supporting the rule laid down in those English cases in which it is held that the presumption is that a legacy to a servant or a creditor is for the purpose of wiping out a debt due from the testator to the legatee, but we do not consider it so. There the action was against the estate or the executors of the last will of the deceased on a claim, rejected by the executors, for services performed by the plaintiff for the deceased during the latter's last illness. In his will the deceased made a bequest to the plaintiff in the sum of three thousand dollars, which expressly provided that the bequest should be "in consideration and in payment for her kind care and attention during my last illness." The court, in effect, held that the will itself thus made it clear that the legacy was to operate as compensation for any services rendered the deceased by the plaintiff, and, of course, the language of the bequest admits of no other conclusion.

We conclude that the judgment appealed from should be affirmed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.