## Wells v. Lewis, Admr.

(Decided February 25, 1921).

### Appeal from Caldwell Circuit Court.

1. Wills—Sufficient Testamentary Character of Letter.—In a letter stating the writer did not expect to live long and that in the event she did not get to make a contemplated visit to town she wanted certain disposition made of her property, is of sufficient testamentary character as to authorize its probate as the last will of the writer.

2. Wills—Signature.—The signature "Ant nanie" to a letter, construed as a will, is a sufficient signature of the writer's name.

3. Wills—Requisites and Validity.—No particular form is required for the disposition of property by will. The distinguishing feature of all testamentary documents is that the writing must appear to have been written animo testandi.

4. Wills—Testamentary Capacity—Execution.—Ordinarily the only proper and necessary matters to be considered and determined in proceedings to probate a will are the testamentary capacity of the testator, the due execution of the will in accordance with statutory requirements and the presence or absence of fraud, mistake or undue influence.

JNO. C. GATES and R. W. LISANBY for appellant.

J. ELLIOTT BAKER for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

The sole question involved on this appeal is whether the following letter is of such a testamentary nature as that it should have been admitted to probate as the last will of Nannie Rodgers. The county court declined to so admit it. An appeal from this order to the circuit court was, on motion of appellee, dismissed, hence this appeal.

The letter is as follows:

"tom i cant rite much but i must tell you something for i cant slep at nite or rest a tal i took thing from there

that was not mine i feel bade over it i cant tel them they are so good to me jon is going with me to ton to take my egs and i am going to fix thing rite i am not wel an if i dont get to go i want you to give it to them the mony i got out ov the lan an the rest ov it to yu no how much of the tobucker mony the was i want them to have it al back mr rogers tol me how he wanted eve thing fix but i woden tel it it al be long to them but wat i live on jon is so good to me it wory me so i cant slep or rest til i get it fix i dont fel like i wil live long and por pet i dont no wat wil be com of him dont let him go to the por hose an tom this plas is yor Ant Ader give it bac to her i ant don her rite O i cant rest but i cant tel jon an Ader i have don them so bad tom do this fer me i dont no wer yu can red it but i dont want no body to no it but yu i have trid to rite it mi self good by tom

"Ant nanie."

Several reasons are given why said paper should not be considered testamentary in nature, among others (a) that the beneficiaries are not named in the writing and therefore were too uncertain and indefinite; (b) the property is not sufficiently described; (c) it is void for uncertainty and (d) it was not intended as a disposition of the writer's estate after death.

The signature "Ant nanie" is sufficient. As said in Page on Wills, sec. 172:

"The testator may sign his name by writing it out in full or by abbreviating it, or by writing his initials or his Christian name, or by using an assumed name where not done with intent to deceive."

In James A. Knox's Appeal, 131 Penn. St. 220, 18 Atl. 1021, 6 L. R. A. 353, the signature of the given name of testatrix was held sufficient, as likewise in Arendt v. Arendt, 80 Ark. 204, 96 S. W. 982. Nor will misspelling of the name signed invalidate the will. Word v. Whipps, 16 Rep. 403, 28 S. W. 151.

A will is an instrument by which a person makes disposition of his property, to take effect after his decease, and which is in its own nature ambulatory and revocable during life. 1 Jarman on Wills, 5th Ed. p. 26. No particular form is required for the disposition of property by will; the distinguishing feature of all testamentary documents is that the writing must appear to be written *animo testandi.*

In Jarman on Wills, 5th Ed. p. 33, it is said:

"The law is not made requisite to the validity of a will that it should assume any particular form, or be couched in language technically appropriate to its testamentary character. It is sufficient that the instrument, however irregular in form or inartificial in expression, discloses the intention of the maker respecting the posthumous destination of his property; and if this appears to be the nature of its contents, any contrary title or designation which he may have given to it will be disregarded."

Endorsement on the back of a note was held in Morrison, etc. v. Bartlett, etc., 148 Ky. 833, 147 S. W. 761, 41 L. R. A. N. S. 39, to be sufficiently testamentary in its character as to justify its probate by the county court. In Hunt v. Hunt, 119 Ky. 39, 82 S. W. 998, a deed not to take effect until the death of certain named persons was construed as a will.

There are many decisions of courts of last resort in which letters have been construed as wills. 40 Cyc. 1092. As an illustration, Milam, etc. v. Stanley, etc., 33 Rep. 783, 111 S. W. 296, 17 L. R. A. (N. S.) 1126, may be cited. In this case it appears W. R. Fletcher had been convicted of the crime of rape, found guilty and sentenced to be hanged. Impressed with the fact that his earthly dissolution was imminent, his petition for executive clemency having been denied, he wrote the following letter to his daughters:

"My dear Loving Daughters:

"I guess my last hope is gone. I don't want you all to grieve after me for I think I will be better off than to be in jail, for I think I am prepared to go and want to ask one thing of you all is to meet me in heaven. Jennie, Lula and Bettie and Mary, I want you to understand that I am as innocent of the charge which I have to die for as an angel in heaven, and it does me good to know that God knows that I am not guilty. Jennie tell John to see that my body is taken home and buried in our own graveyard, and get Stinson to preach my funeral. Tell him I am at rest. I want to make you and Lula a deed to that house and lot, and I don't want you or her to ever have any trouble over it. Jennie, I don't do this because I think more of you and Lula than I do of Mary and Bettie, but I do it because you both attended to your dear old mother

so good. I hope to soon meet her in heaven. Jennie Mary has got enough of my money to bury me I guess. So this is from your loving father.

"W. R. Fletcher.

"To Jennie and Lula, may God bless you all, is my prayer.

"Yours, W. R. F."

In treating this as the last will of the writer the court says he did not have in mind that he was thereafter to make his daughters a deed to the home and lots; he wished them to have the property and not to have any trouble over it, thus indicating he had in mind not something he intended to do in the future, but something he was then doing.

In Webster, etc. v. Lowe, etc., 107 Ky. 293, 53 S. W. 1030, the following letter was held to be the will of James Lowe:

"I was born December 28, 1804, . . . I purchased a house and lot, and I, my mother, wife, and Charley Webster moved into town in 1859. I bought the property on Third and Main, left Charley some money, and he entered the grocery business. Our arrangement was that he could have the use of the building as long as he may require it, so that it brought me in ten per cent. on the purchase, which was $1,550. The rent has been paid regularly. He has done much improvements about it, and I have requested my executors to give a clear deed for the property, after my death, to Maggie his wife and Charley."

The court in its opinion, among other cases, cites Clarke v. Ransom, 50 Cal. 595, wherein the following words were held to be testamentary and the writing containing same admitted to probate:

"Dear old Nance: I wish to give you my watch, two shawls, and also five thousand dollars. Your old friend, E. A. Gordon."

A paper reading: "Mrs. Sophie Loper is my heiress. G. Ehrenberg," was held to be a will in Succession of Ehrenberg, 21 La. Ann. 280, 99 Am. Dec. 729. Likewise a writing in these words, to wit:

"It is my wish and desire that my good friend and relative, Dr. Joseph B. Outlaw, have all my property of every description, David Outlaw," was declared to be a will in Outlaw v. Hurdle, 1 Jones L. 150 (N. S.).

The court in Webster, etc. v. Lowe, *supra,* says it is not necessary to the validity of a will that it contain the words "give," "will," "bequeath," etc., as the testator's intention and purpose may be gathered from other language employed.

In Cowley, etc. v. Knapp, etc., 42 N. J. L. 297, (8 Vroom) the following was held sufficiently testamentary in character to be entitled to probate:

"My dear Father:

"In case anything happening to us, I would wish you to take charge of our property. By law, I suppose it would be divided between all my sisters. I would wish it otherwise. I wish all the property to be sold except any portion of Deal Emma would wish to retain for herself; then the money to be put in government securities, or any other sure investment. I make Emma Knapp my sole heir. I know she is just, and will give to those who need, and will be guided entirely by your advice.

"Your affectionate daughter,

Mary Boyle,

120 East 26th Street."

Testatrix and her husband both died while traveling and the court held the title to the premises passed to Emma Knapp.

In re Ledford's will, 176 N. C. 610, 97 S. E. 482, the following paper was ordered probated as a will.

"3-9-18.

"Mr. J. B. Ivey, Charlotte, N. C.

Dear Sir:

"Please administer on my estate and I want my wife (Ella Gnatt Ledford) to have everything I own, but invest it or fix it so she can get it as she needs it so she can not lose it.

"Please look after Ella and the children and see that they have what is necessary and do not suffer. (Here follows an itemization of the estate.)

"All I owe is a $5,000 note at the Bank of Cooleemee.

"I am on one note as security and it is for $400 for A. K. Walker.

"My notes, insurance policies, stock certificates, are in a tin box in the Bank of Cooleemee, and I have a personal drawer in the safe of J. N. Ledford & Co., with papers in it.

"Please do the very best you can for my wife and children. Fix my property so my wife will have plenty as long as she lives and there is enough.

"J. N. Ledford (seal)"

In line with the foregoing we think it evident the writing in question should have been admitted to probate as the will of Aunt Nannie Rodgers. The writer was mindful of her inability to express herself clearly. Her simplified and phonetic spelling is indeed unique, but withal expressive of a desire to right a wrong that had been done. She was not well at the time, and did not expect to live long and sickness we are told prevented her from taking her eggs and making the contemplated trip to town with her stepson John. She indicated and directed in her crude way what disposition to make of certain of the property in the event she did not get to town. That it may be difficult or impossible to positively identify some of the beneficiaries or fix the amount due is not involved here. We are concerned on this appeal solely with the matter of probate.

Ordinarily the only proper and necessary matters to be considered and determined in proceedings to probate a will are the testamentary capacity of the testator, the due execution of the will in accordance with the statutory requirements, and the presence or absence of fraud, mistake, or undue influence. Matters of interpretation and construction, as well as the validity of particular bequests and devises are not involved. 40 Cyc. 1231; Yates' Will, 2 Dana 215; Kelly v. Kelly, 5 B. Mon. 369; Thompson on Wills, sec. 498.

We are satisfied upon the showing made that a *prima facie* case for probate was established. It sufficiently appears from the letter that the writer was endeavoring to make a disposition of her property testamentary in character.

For the reasons given the judgment will be reversed for further proceedings consistent herewith.