[Civ. No. 2143.   Fourth Appellate District.—November 9, 1938.]

In the Matter of the Estate of GEORGE M. LOGAN, Deceased.   VIDA ELLIS, Appellant, v. FRANK LOGAN et al., Respondents.

Hickox & O'Connor, August J. O'Connor and P. James Kirby for Appellant.

Guthrie & Curtis for Respondents.

GRIFFIN, J.—This is an appeal by petitioner Vida Ellis from an order denying her petition to vacate and set aside an order admitting a will to probate and denying her petition for probate of will.

George M. Logan died on the 14th day of February, 1936. On February 21, 1936, Frank Logan, the respondent herein, filed in the Superior Court of San Bernardino County, a document purporting to be the last will and testament of George M. Logan, deceased, and petitioned the superior court of that county to admit the document to probate and that he be appointed as executor thereunder. On March 2, 1936, the court admitted the document to probate and appointed Frank Logan as executor thereof, whereupon he duly qualified as such. On September 2, 1936, Vida Ellis, appellant herein, filed in said superior court a pleading entitled "Petition to Vacate and Set Aside Order Admitting Will to Probate and for Probate of Will", wherein she requested the court to vacate and set aside the order theretofore made admitting the will of George M. Logan to probate, and sought to have the document already admitted to probate and another instrument, a copy of which was attached to the petition, admitted to probate as one will, and also sought to have Frank Logan appointed executor thereof. Demurrers and answers were filed by Frank Logan individually and as executor. The case was tried May 12, 1937, by the court.

After the death of George M. Logan and in the presence of respondent Frank Logan, brother of the decedent, the cashier of the bank, and Wesley Logan, a nephew, the safety deposit box of decedent was opened. In it was found a sealed en-

velope bearing the written words: "Frank Logan—Personal". Also found in the safety deposit box with other papers of the decedent was the instrument admitted to probate herein, reading as follows:

"Fontana, California
"Dat.. 15 of July, 1932

"I, George Melvin Logan of Fontana, San Bernardino County, California.

"Being of sound mind and memory and not acting under duress or influence of any person or persons whatsoever do hereby make, publish and declare this my last will and testament that is to say. That after all of my just depts have been paid I hereby give and bequeat.. to Frank Logan all of my property both real and personal, of which I may die possessed or entitled to for his use and benefit absolutely I leave my Sister Mrs. Clara Smith $5 and Robert H. Logan $5 I hereby appoint Frank Logan as the sole executor of this last will and testament without bonds.

"GEORGE MELVIN LOGAN."

In the sealed envelope marked "Frank Logan—Personal" was found an instrument entirely written, dated and signed in the handwriting of the deceased, reading as follows:

"Fontana    Cal
"July 15, 1932.

"Frank when I am dead and gon, you see Sister gets a bout $25 a month and you get all the rest as long as you live, and when you ar gon give Clara Logan one $1000 and Vida Ellis one $1000 and what is left give to Wesley Logan.

"GEORGE M. LOGAN."

Vida Ellis was the niece of decedent and so far as the record discloses there is no showing that the relationship between the decedent and the appellant was other than affectionate. Clara M. Logan testified that in December, 1933, she had a conversation with George M. Logan wherein he said that if he died he wanted everything to go to Frank. Wesley Logan testified "that Uncle George said he was getting along in years and might die"; that he asked him what he wanted done if he died; that George M. Logan replied, "he wanted Frank to have it".

Appellant cites section 101 of the Probate Code, which provides: "Several testamentary instruments executed by the

same testator are to be taken and construed together as one instrument. A will is to be construed according to the intention of the testator. Where his intention cannot have effect, to its full extent, it must have effect as far as possible," and claims that in the light of the quoted section and authorities cited (*Estate of Murphy,* 104 Cal. 554 [38 Pac. 543], *Clarke* v. *Ransom,* 50 Cal. 595, *Estate of Kelley,* 178 Cal. 523 [174 Pac. 35], *Estate of Bergland,* 180 Cal. 629 [182 Pac. 277, 5 A. L. R. 1363], *Estate of Cross,* 163 Cal. 778 [127 Pac. 70], and *In re Noyes Estate,* 40 Mont. 231 [106 Pac. 355]), there can be no doubt that if both of the papers found in the safety deposit box of the deceased were testamentary in character it was error for the court to refuse to admit them to probate as one will as prayed for in appellant's petition.

The court found that George M. Logan, deceased, did not intend said instrument to be his last will and testament. Appellant attacks this finding on the ground that it is not supported by the evidence. Taking the instrument here in question in its entirety, without the aid of any extraneous circumstances, it cannot be said with any degree of certainty that this instrument was intended by the writer as a testamentary disposition of any of his property. In its construction, the court may examine the circumstances under which it was written and such other extraneous circumstances as are presented and appear to have a bearing on the question of testamentary intent.

The will admitted to probate, although holographic, contains much of the formal language usually found in printed and witnessed wills. It further provides "I . . . do hereby make, publish and declare this my last will and testament." In the second instrument there was no such declaration. It did not, on its face, purport to be a will.

In the document admitted to probate the testator did thereby "give devise and bequeat . . to Frank Logan all of my property . . . of which I may die possessed or entitled to for his use and benefit absolutel*ey* . . . " He disposed of his entire estate to one beneficiary, absolutely and unqualifiedly. There is no attempt by the second instrument to make a revocable disposition of the testator's property.

There is another convincing circumstance, i. e., the second instrument was enclosed in a sealed envelope addressed to

"Frank Logan—Personal". The note began with the salutation "Frank when . . . " Again, the very fact that the second instrument was executed on the very day the testator executed the instrument which he therein declared to be his last will and testament may be considered as evidence that the second instrument was not executed with testamentary intent. The disputed instrument is quite indefinite in that it requests Frank to see that his sister gets about $25 a month. There is nothing definite as to the amount. The deceased, in effect, expressed a desire that his brother Frank, in addition to the above, give to Clara Logan $1,000, Vida Ellis $1,000, and the remainder, if any, to Wesley Logan when he, Frank Logan, died, thus leaving it to the discretion of the brother to make such provision for them. By the terms of the will admitted to probate the brother is to receive the property, both real and personal, for his use and benefit absolutely. By the terms of the proposed document he would only receive a life interest in the property subject to the payment of about $25 per month to the sister, and after his death $1,000 each would be paid to Clara Logan and Vida Ellis, and the remainder to Wesley Logan. The terms of the two instruments, construed together, make an absolutely inconsistent disposition of the property. In the case of *White* v. *Deering*, 38 Cal. App. 433, 436 [177 Pac. 516], it was said:

"Obviously, the only theory upon which the letter could be held to be admissible for the purpose for which it was offered is that the letter was in legal effect a testamentary instrument or intended by the testatrix as a part of her will. To give an instrument the effect of a last will, holographic in form, such as is the letter referred to, if anything in the nature of a testament, where there exists a previously made and unrevoked will of the testator, such instrument should be so phrased that there can be no doubt from its language that the intention of the testator was thus to make further testamentary provisions regarding the disposal of his estate—either that it was to explain, qualify, or modify certain provisions of his previously made will, or to make a different disposition of a part of his estate from that made of it in the original testament."

To the same effect is the holding in *Estate of Goldthwaite*, 140 Cal. App. 551 [35 Pac. (2d) 1050], wherein these words are used in the proffered document:

"Father— . . . will you do me the exerlasting favor of giving one-half the proceeds from the sale of my house . . . to Mary Johnson . . . ''

The court stated:

"We think that the writing shows that it was addressed to his father, not as executor of the last will and testament of decedent, but rather to his father as a devisee under his will and that, instead of being testamentary in character, it simply expressed a desire that his father, as devisee under the will, should make certain use of the property devised to him.''

We believe the same construction should be given to the proffered instrument in the instant case and that it was a mere expression of a desire on the part of the deceased that the brother, not as executor but personally, might or might not carry out, at his discretion.

In determining the validity or effectiveness of an instrument claimed to be testamentary in character, the court must be guided in its conclusions by certain considerations: First, the testamentary capacity of the decedent; second, the conformity with the statutory requirements in the execution of such instrument; and third, the intention of the testator in executing the document. (*Estate of Hughes,* 140 Cal. App. 97 [35 Pac. (2d) 204]; *Estate of Dexter,* 179 Cal. 247 [176 Pac. 168]; *Estate of Meade,* 118 Cal. 428 [50 Pac. 541, 62 Am. St. Rep. 244]; *Estate of Major,* 89 Cal. App. 238 [264 Pac. 542]; *Estate of Goldthwaite, supra; White* v. *Deering, supra.*) We find sufficient evidence upon which the court could reasonably find: (1) that this second offered instrument was not intended as a testamentary disposition of decedent's property; and (2) that petitioner failed to meet the burden of proving that the instrument was so intended. (Sec. 1981, Code Civ. Proc.; sec. 1230, Prob. Code.)

Accordingly, the order appealed from is affirmed. Respondent to recover costs on appeal.

Barnard, P. J., and Marks, J., concurred.