[Civ. No. 18132.   Second Dist., Div. Three.   Mar. 6, 1951.]

Estate of MARY ELLEN MOORE, Deceased.   GARNETTE L. SCOTT, Respondent, v. CLARENCE R. MOORE, Appellant.

F. Murray Keslar and Crider, Runkle & Tilson for Appellant.

Vincent Scott for Respondent.

BARTLETT, J. pro tem.—Mary Ellen Moore committed suicide on July 10, 1948.   She left surviving her Clarence R. Moore, her husband, the appellant herein, her mother, Garnette L. Scott, the respondent herein, and a son, Michael John Moore, who was five years of age.   On a desk near the scene of her death was found a sheet of paper in the handwriting of the deceased upon which was written: "Everything that is mine, both personal and real, I leave to my mother, Garnette.   Money in Bank of America from my father's estate and all other things left to me.   (Signed) MARY ELLEN MOORE."   This undated document was presented to the court on August 24, 1948, denied probate, and appellant was appointed administrator of the estate.   No appeal was taken from this order.

Some three weeks later the respondent found in the pocket of one of her coats hanging in a closet one of decedent's rings around which was wrapped a piece of tissue paper upon

which was written entirely in the handwriting of the deceased these words:. "July 4, 1948 Mother Here is my ring. I leave you this and all that is mine. Mike is provided for. Dont grieve for me. I love you. I'll leave a Will. (Signed) MARY ELLEN." On July 4, 1948, Mary Ellen Moore was of sound mind. It was this note which was admitted to probate as the last will and testament of the deceased.

The only question raised on this appeal is whether or not the decedent intended this instrument to be her Will. Other than what may be inferred from the facts we have related, no extrinsic evidence was offered by either party bearing on the intent of the deceased in writing this letter to her mother.

To be a will, the instrument offered for probate must have been executed with testamentary intent and it must be shown that by that very paper itself she intended to make a disposition of her property. (*Estate of Wunderle*, 30 Cal.2d 274, 280, 281 [181 P.2d 874]; *Estate of Button*, 209 Cal. 325, 331 [287 P. 964]; *Estate of Miller*, 128 Cal.App. 176, 183 [17 P.2d 181]; *Estate of Kelleher*, 202 Cal. 124, 129 [259 P. 437, 54 A.L.R. 913].)

In *Estate of Pagel*, 52 Cal.App.2d 38 [125 P.2d 853], the decedent, then an inmate of Cedars of Lebanon Hospital, on November 21, 1939, handed the manager of the hospital a sealed envelope with the remark that he was leaving everything to the hospital and asked the manager to write on it: "To be opened after my death by Cedars of Lebanon Hospital." Five days later Pagel died. The envelope was opened and found to contain a document entirely written, dated and signed by the decedent addressed to the hospital in which he set forth all of his property in detail and stated among other things: "When I accepted the benevolence of the Ced of Lebanon Hospital it was for me a matter of course that my property and estate should only *to* to the Cedars of Lebanon Hospital after my death." He then stated that he hoped within the next few days to induce the hospital to put its attorney at his disposal to make such a Last Will and Testament. This document was dated October 17, 1939. The case holds that this document could not be admitted to probate.

In the proceeding before us the decedent said: "I'll leave a Will." The following language of the court in the case just cited is therefore pertinent (p. 44): "We say this because the decedent made it perfectly clear by the language used in his letter that he did not intend the letter to act as a

posthumous declaration, but on the contrary stated he desired that his posthumous'disposition narrated in his letter should be declared in a last will and testament. In brief, when he wrote the letter it is perfectly obvious from its language that he did not regard it in and of itself as a posthumous disposition. As it is clear that it was not written with an *animus testandi*, it did not and could not achieve that status by any subsequent act on his part short of a writing to that effect.'' In *Estate of Kisling,* 68 Cal.App.2d 163 [156 P.2d 57], the decedent wrote a letter to her lawyer stating that she was ill and asking him to make a Will and then wrote out specifically what she wanted done with her property. This instrument was refused admission to probate and the court stated (p. 167) : ''And, where on its face the instrument is free from ambiguity, it may not be shown that the maker thereof intended it to operate differently than what the language used indicates.''

Respondent argues that the intent clearly expressed in the undated document found near the body of decedent ''fortifies and corroborates'' the intent expressed in the document offered for probate. It does fortify and corroborate the manner in which the decedent desired to leave her property but does not show that she intended to have that very paper itself operate as a Will. In *Estate of Major,* 89 Cal.App. 238 [264 P. 542], the decedent wrote a letter to his nephew stating: ''. . . i will go to St. Andre before long and i take up with me the copy of my testament you ask me for but be sure i have not change my idea your are to be the owner of the hold thing i am worting about $15,000 to $16,000 dollar. . . .'' In considering the question as to whether or not this document should be admitted to probate the court stated (p. 241) : ''Proof that a party intended to make a disposition of his property similar to or identical with that contained in a certain paper which he has executed, does not make such paper his will. No matter what his intentions may have been with respect to the disposition of his estate, if the maker of an instrument did not intend *by that particular paper* to dispose of his property in the manner in which it could have been disposed by a will such instrument must be denied probate, no matter how correct it may be as to form and execution and no matter how clearly it may conform to the intentions of the maker which he had otherwise expressed (1 Alexander on Wills, §§ 46, 47).''

The language of the decedent ''I'll leave a Will'' was clear

and unambiguous. It negatives any idea that she considered the letter to her mother to be a will. On the contrary it shows that some other writing yet to be made would be her will. The fact that the undated paper was written in an attempt to make a will is corroborative of this construction.

The judgment admitting the instrument to probate and revoking the letters of administration theretofore issued to Clarence R. Moore is reversed. The administrator of the estate of Mary Ellen Moore is directed to pay the costs of this appeal from the assets of the estate.

Shinn, P. J., and Vallée, J., concurred.