<hr />

CASE 52—WILL CASE—Nov. 23.

## Webster, Etc. v. Lowe, Etc.

APPEAL FROM CARROLL CIRCUIT COURT.

1. WILLS—PRESUMPTION OF REVOCATION.—A presumption arises that
a will once known to exist has been revoked by the testator
when no such will can be found after the testator's death.
2. SAME—FORM.—Any paper in the handwriting of the testator and
signed by him manifesting his posthumous intentions as to the
disposition of his property is entitled to probate, no matter how
inartificial its form.

GAUNT & DOWNS AND WINSLOW & WINSLOW FOR APPELLANTS.

1. The paper in question is testamentary in character, showing
clearly the intention of the testator that Webster and wife should

have the property named in it. The form is immaterial. Fee v. Taylor, 83 Ky., 259.

2. The circumstances of this case overcome the presumption that the testator had revoked his former wills. Steele v. Price, 5 B. M., 66.

3. The county court having probated a paper as the last will and testament of the deceased person, and the administrator having been duly appointed by the county court, it is error for the circuit court, during the pendency of the appeal, to appoint a receiver for the real estate disposed of by the will as probated.   .

HARVEY MYERS FOR APPELLEES.    (M. C. LYKINS OF COUNSEL.)

1. Can a testamentary disposition of property be made upon proof · of a will seen last in the possession of the testator, two or three years before his death, without proof of its loss and without evidence that it was not destroyed *animo revocandi?*

2. The presumption in such case is that testator destroyed the will.

3. This presumption will endure until overcome by positive proof. Citations:  Thornton on Lost Wills, secs. 32, 33, 34; Mercer v. Mackin, 14 Bush, 434; Thornton on Lost Wills, p. 119, secs. 50, 52, 56, 71, 72; Minor v. Guthrie, 9 Ky. Law Rep., 113; Betts v. Jackson, 6 Wend, 173 ; Steele v. Price, 5 B. Mon., 66.

HARVEY MYERS FOR APPELLEES IN A PETITION FOR A REHEARING.

The instrument probated shows on its face that the party executing it did not regard it as complete in itself for the purpose of disposing of the property mentioned in it.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

A motion was made in the Carroll County Court to have the paper which reads as follows, to wit: "I was born December 28, 1804,—three days before New Year. Came from England to New York, July, 1839. Went to Piqua to reside. Stayed there two or three years. Taught school part of the time, and part working at my trade (hatter). From there, I and my wife moved to Cincinnati.  I took a situation under the employ of Wm. Dodd, Main street, 144. I remained with him thirteen or fourteen years, foreman of the manufacturing department, and in the last few years an interest in the business. During this time my wife died with the cholera, and I married my second wife, Julia Webster, about the year 1857. We moved to Carroll-

ton. Price (her son-in-law) and I selected a farm, and both families lived together about two years when we separated. I purchased a house and lot, and I, my mother, wife, and Charley Webster moved into town in 1859. I bought the property on Third and Main, lent Charley some money, and he entered the grocery business. Our arrangement was that he could have the use of the building as long as he may require it, so that it brought me in ten per cent. on the purchase, which was $1.550. The rent has been paid regularly. He has done much improvements about it, and I have requested my executors to give a clear deed for the property, after my death, to Maggie, his wife, and Charley," —probated in part as the will of James Lowe, deceased; and the court adjudged that it was his will, to the extent of bequeathing all the property described therein to Webster and wife.

The evidence in this case shows that Lowe made at least two holographic wills, in each of which he devised the property described in the writing above quoted to Webster and wife. These wills were not found at his death. The circuit court reversed the case, upon the presumption that the wills were destroyed, and the paper in question was not of testamentary character.

It was held in Mercer v. Mercer's Adm'r. 87 Ky., 21, [7 S. W., 307], that where a will which was last seen in the custody of the testator can not, after due search, be found, the law presumes that the testator, in some way, with the intention of revoking the will, destroyed it, and, if its absence is not accounted for, this presumption will prevail.

We will assume that this presumption should prevail as to the two holographic wills mentioned. Both the body and signature of the paper above quoted were in the handwriting of James Lowe, and it was found among his papers

at his death. If it is of testamentary character, then it is a disposition of the property therein mentioned, and as to his remaining property he died intestate. To the validity of a will, the law does not require it should assume any particular form, or that any technically appropriate language should be used therein, if the intention of the maker is disclosed, and the destination of his property at his death is described. The language used by the testator shows that it was his purpose that the title to the property should vest in Webster and wife after his death. The fact that the testator may have labored under the impression that it was necessary for his executors to convey the property to Webster and wife after his death does not indicate that he did not intend the paper in question to be a disposition of the property. It was rather an expression of opinion that it was proper at his death that a deed should be made to Webster and wife for the property.

A writing, executed by a payee and holder of a note, stipulating that, if the payee should not collect the note in her lifetime, her representatives were to surrender it to the payor, was established as a testamentary disposition. Knott's Adm'r v. Hogan, 4 Metc., (Ky.), 99.

It was held in Jackson v. Jackson's Adm'r, 6 Dana, 257, that a promissory note, payable after the maker's death, and delivered by him to his nephew, without other consideration, might be sustained as a testamentary provision. It is said in Jarman on Wills (volume 1, p. 33): "The law has not made requisite, to the validity of a will, that it should assume any particular form, or be couched in language technically appropriate to its testamentary character. It is sufficient that the instrument, however irregular in form or inartificial in expression, discloses the intention of the maker respecting the posthumous destina-

tion of his property; and, if this appear to be the nature of its contents, any contrary title or designation which he may have given to it will be disregarded."

In Johnson v. Yancey, 20 Ga., 707, [65 Am. Dec., 646], the court said: "The doctrine is now too well settled to need argument or authority to sustain it, that an instrument may be in the form of a deed, signed, sealed, and delivered as such; still, if it discloses the intention of the maker respecting the posthumous destination of his prop-erty, and is not to operate until after his death, it is testa-mentary only."

In Clarke v. Ransom, 50 Cal., 595, a writing in the fol-lowing words: "Dear old Nance: I wish to give you my watch, two shawls, and also five thousand dollars. Your old friend, E. A. Gordon,"—was held to be testamentary, and admitted to probate.

In Succession of Ehrenberg, 21 La. Ann. 280, [99 Am. Dec., 729], the following language was held to be a will, to wit: "Mrs. Sophie Loper is my heiress. G. Ehrenberg." An unattested writing in these words: "It is my wish and desire that my good friend and relative, Dr. Joseph B. Outlaw, have all my property of every description. Da-vid Outlaw,"—was declared, in Outlaw v. Hurdle, 1 Jones L., 150 (N. C.), to be a will.

It will be seen from the foregoing that it is not necessary to the validity of a will that it shall contain the words "give," "will," "bequeath," etc., as the testator's inten-tion and purpose may be gathered from other language employed.

We are of the opinion that the paper in question is of testamentary character, and that Webster and wife take the property, by its terms.

The judgment is reversed, for proceedings consistent with this opinion.