**BARNES et al. v. HORNE et al.   (No. 6373.)**

(Court of Civil Appeals of Texas.   Austin. June 22, 1921.   Rehearing Denied Oct. 12, 1921.)

1. **Wills  130—Instrument written wholly by party a will.**

An instrument written wholly by a party and signed by him is his will, if it be testamentary in character, under Rev. St. arts. 7856, 7857, 7859.

2. **Wills  133 — Abbreviation of first name held sufficient signature.**

A letter testamentary in character and signed, "Your brother, Ed.," was sufficiently signed to render it a valid holographic will.

3. **Wills  96—Instrument testamentary when it makes disposition to take effect at death.**

An instrument is testamentary in character when it makes a disposition of the testator's property, or a portion thereof, to take effect at his death.

4. **Wills  293(6)—Other letters to be considered on issue of testamentary intent in letter offered for probate.**

Where a letter was offered for probate as a holographic will, held, other letters written at about the same time should have been considered by the jury on the issue of testamentary intent.

Appeal from District Court, Falls County; Prentice Oltorf, Judge.

In the matter of the estate of Edwin D. Horne, deceased. A writing was offered as a will by Katherine H. Barnes and others and contested by Elsie T. Horne and others. From an adverse judgment, proponents appeal. Reversed and remanded.

Frank Oltorf, of Marlin, for appellants.
Ben H. Rice, Jr., of Marlin, for appellees.

### Findings of Fact.

JENKINS, J.   Edwin D. Horne's legal residence was Marlin, Tex. He died in the naval hospital at Chelsea, Mass., September 23, 1918, intestate, unless the instrument hereinafter set forth is his holographic will. His only heirs at the time of his death were his brother, A. C. Horne, and his niece, Katherine H. Horne, now Barnes, who is joined by her husband herein. A. C. Horne is dead, and appellees are his heirs.

At the time of his death, and for some time previous thereto, Edwin D. Horne was a member of the United States navy. On February 18, 1918, he wrote the following letter to his brother, A. C. Horne, then residing at Los Angeles, Cal.:

"Key West, Fla., Feb. 18, 1918.

"Dear Bud: I have received all of your letters and am sorry that I haven't answered before now.

"I have for the last month been trying to dig up a notary public and whenever I went to his office he happened to be out. They have only one in this town and if you catch him you are lucky; whenever I do I will send you the papers at once. I am going to take a day off this week and lay for him at his office, maybe I will have some luck. Elsie said she had an allotment check for Mother for $40.00; if you can cash it, keep the money and use it toward the expenses of Mother's estate. I don't want you to pay all her debts. I want to pay half or all, it don't make any difference to me one way or the other.

"I have been trying for the last month to stop the allotment that was made out to Mother, but so far I have had little success; maybe these people in Washington will wake up some of these fine days and stop it.

"Just as soon as I can get those papers I will send them to you. I think that is a fair price for the house provided he pays cash which you said he would.

"I am also having a will drawn up and then I will feel better. You let me know about expenses and if you need any money. I am not much on that kind of work. I admit I should know lots more about it than I do, but as things stand I leave it up to you. I will furnish you with as much money as I can if you happen to need it in caring for the property.

"You are right when you said Katherine should have an education and I will do all I can to see that she gets one. I will do everything I can' for her and everything I have is hers if I happen to cash in.

"I have sent her several dollars since Mother's death and she seems to appreciate it very much. I think Katherine is a good girl and I will do everything I can for her. If you are willing to share equally the home place with Katherine, so am I. You can fix that up to suit yourself.

"This is certainly a bum town. The only thing they make or have good here is cigars and they are very good. I am sending you a box of Gato's cigars; they are all Havana tobacco and I hope you will like them. They are fresh; I went down to the factory and bought them; they ought to be a few days behind this letter.

"I would like to be back in good old Los Angeles and see those fights again. I often think of Los Angeles and I have had the blues ever since I left there. I often think of that town.

"Will close for this time hoping to hear from you again, love to baby and Elsie, I am

"Your brother,        [Signed] Ed."

This letter was offered by appellants in the probate court of Falls county, as the last

will and testament of Edwin D. Horne, and was probated as such.

Upon appeal to the district court the case was submitted to a jury upon the following special issue:

"When Edwin D. Horne wrote the letter in question, did he intend same to operate of itself as a disposition of his property to take effect after his death, or, on the other hand, did he use the same by way of information to the person to whom written as to how he intended to make his will or as to what a will which he was then having drawn up would provide?"

To which the jury answered:

"We, the jury, find that the letter written by Edwin D. Horne to his brother, Clark Horne, was information as to his intents of a final will."

Thereupon judgment was entered against appellants.

The letter hereinbefore set out was wholly in the handwriting of Edwin D. Horne. He intended the signature "Ed." as his signature. At the time of writing this letter he was 25 years of age, and was of sound mind.

### Opinion.

[1] An instrument written wholly by a party and signed by him is his will, if it be testamentary in character. R. S. arts. 7856, 7857, and 7859.

[2] A signature by initials is sufficient. Pilcher v. Pilcher, 117 Va. 356, 84 S. E. 667, L. R. A. 1915D, 902, and authorities cited in note to same.

[3] An instrument is testamentary in character when it makes a disposition of the testator's property, or a portion thereof, to take effect at his death. Milam v. Stanley (Ky.) 111 S. W. 296, 17 L. R. A. (N. S.) 1126; Lindemann v. Dobossy, 107 S. W. 111; Fletcher v. Gates, 63 S. W. 937; Williams v. Noland, 10 Tex. Civ. App. 629, 32 S. W. 328; Morrison v. Bartlett, 148 Ky. 833, 147 S. W. 761, 41 L. R. A. (N. S.) 39; Webster v. Lowe, 107 Ky. 293, 53 S. W. 1030.

Tested by the foregoing definition, a portion of the letter set out in our findings of fact, if taken by itself without reference to any other part of said letter, and without considering any other circumstances in evidence, is in the opinion of the writer testamentary in character. The part of said letter here referred to is as follows:

"You are right when you said Katherine should have an education, and I will do all that I can to see that she gets one. I will do everything I can for her and everything I have is hers if I happen to cash in."

Taken by itself, this language indicates a definitely formed purpose that, in the event of his death, his niece, the appellant herein, should have all of his property. If it was his intention so to declare, he had made a will, though he may not have known it; that is to say, he may have erroneously supposed that it was necessary to repeat this declaration by certain formalities which he technically called a will.

If, on the other hand, he meant only to say that he expected to make a will, and to state how he intended to dispose of his property in such will, then the language used would not constitute a will.

We think that, taken in connection with other portions of the letter, and all of the facts in connection therewith, as shown by the evidence, the language quoted is rendered sufficiently ambiguous as to make the intention of the writer thereof a question of fact for the jury.

The form of the question submitted by the court is not, perhaps, the best manner in which this issue could have been submitted, but it is not sufficiently objectionable to constitute reversible error.

Three letters, one of January 10, 1918, one of March 5, 1918, and one of March 22, 1918, were read in evidence, but the court instructed the jury that they were to consider these letters only on the issue of the testamentary capacity of Edwin D. Horne. Appellant excepted to this instruction, and we sustain her assignment of error in reference thereto.

These letters show a great affection on the part of the writer for appellant, and also indicate his purpose to materially assist her financially. For instance, in the letter of January 10th he says:

"I had my life insured for $10,000 and made out to Mother, none since she passed away. I am going to make it out to you; in case I am killed you will get $57.00 a month for 240 months. That is the way the government pays it. Now if anything happens to me I want you to have it. The government will have your name and everything, so it won't be much to worry about on your part. I am afraid, dear little girl, I will never see you again, but here is hoping I come out alive, and believe me I will certainly die fighting."

[4] These letters should have been considered by the jury on the issue of testamentary intent.

For the error indicated, this cause is reversed and remanded for a new trial in accordance with this opinion.

Reversed and remanded.

KEY, C. J., and BRADY, J. We concur in the result announced in the foregoing opinion, but do not concur in all that is said therein. In fact, we consider it unnecessary, if not obiter dicta, for this court to express any opinion as to how the paragraph of the letter relied upon by appellants as constituting a will should be construed, if considered by itself, because, as is conceded by Mr. Justice JENKINS, it cannot be so considered; and therefore we prefer to express no opinion upon that abstract question.