IN RE IRVINE'S ESTATE.
WILD, APPELLANT, v. HALL, RESPONDENT.

(No. 8341.)

(Submitted January 6, 1943. Decided June 28, 1943.)

[139 Pac. (2d) 489.]

*Mr. James P. Kennedy,* for Appellant, submitted a brief and argued the cause orally.

No appearance in behalf of Respondent.

MR. JUSTICE ADAIR delivered the opinion of the court.

Appeal from order refusing to admit to probate a testamentary writing offered as a holographic will. The writing reads:

"Will of Belle B. Irvine

"I, Belle B. Irvine of Butte Montana being of sound mind and memory do hereby made and declear this as my last will and testament.

"After payment of all my just debts and expenses of administration I give, devise and bequeath all the residue of my property of whatever kind and wherever situated to my nephew, Edgar Wild, Subject, however to a trust. I appoint my said nephew Edgar Wild, the executor of this will to serve without bond.

"In witness where of I have hereunto set my hand, this day of May, 1938,

Belle B. Irvine".

The trial court, after hearing had, made an order wherein it found and ordered:

"The court being * * * fully advised in the premises finds that said alleged will is entirely written and signed by the hand of the said Belle B. Irvine but does not bear the day of the month of the execution thereof, such part being omitted from the date of the execution thereof.

"It is therefore by the court ordered that said instrument, propounded as the last will and testament of Belle B. Irvine, deceased, be, and the same is hereby rejected and denied probate."

The making of the above order constitutes appellant's only specification of error.

Admittedly the writing was entirely written and signed by the hand of the deceased. The one reason assigned by the trial court for rejecting the writing as decedent's last will is that it "does not bear *the day* of the month of the execution thereof."

The question for decision is: Do the statutes of Montana require that a holographic document making testamentary disposition of property must give, in addition to the year and month of execution, the *day of the month,* under penalty of being declared null, void and of no effect as a holographic will?

580

In the statutes of our state referring to holographic wills we find no mention whatever of incorporation in the instrument of the day of the month of the execution thereof.

Section 6981, Revised Codes, defines a holographic will thus: "A holographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this state, and need not be witnessed."

"Holograph" is defined by Webster's New International Dictionary as, "A document, as a letter, deed, or will, wholly in the handwriting of the person from whom it proceeds and whose act it purports to be." The word is a combination of the Greek word *holos,* meaning, all, complete, whole with the Greek word *graphos* or *graphein,* signifying something written, a writing. Hence the definition of a holographic will set forth by the legislature in section 6981, Revised Codes, conforms to the approved usage of the language and signifies a will wholly written by the testator. The writing must not be contaminated by any stranger's touch. The will must be wholly the handiwork of the testator. The entire will, all the will, must be wholly in the handwriting of the testator himself.

The statutory definition (sec. 6981, supra) contemplates that a holographic will be entirely written by the hand of the testator himself including: (1) The principal part of the writing, the part thereof disposing of that which the testator would have done after his death, i. e., the will proper; (2) the part of the writing wherein the testator gives or indicates the time when the will was made, i. e., the *datum* clause or the dating part; and, (3) that part of the writing wherein the testator signs or writes his name to authenticate the writing as the testator's will, i. e., the part where signed, the signature.

Thus the legislative definition (sec. 6981) contemplates that a holographic will may have three parts, namely: (1) The will proper, (2) the date, and (3) the signature, and that each of such parts be written by the hand of the testator and no one else.

While the legislature has not specifically defined the word ▪ "dated" used by it in section 6981, yet it has declared the rules that are to be employed in interpreting statutes and "to aid in their just application" (sec. 8738) "and these rules and restrictions are obligatory on courts." (*In re Noyes' Estate,* 40 Mont. 190, 199, 105 Pac. 1017, 1020.)

"Interpretation must be reasonable." (Sec. 8771, Rev. Codes.) "An interpretation which gives effect is preferred to one which makes void." (Sec. 8770.) "The law respects form less than substance." (Sec. 8757.) "The law neither does nor requires idle acts." (Sec. 8761.) "The law disregards trifles." (Sec. 8762.)

The legislature has also enacted certain statutory rules for interpreting wills among which are the following: "A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible." (Sec. 7016.) "Where the meaning of any part of a will is ambiguous or doubtful, it may be explained by any reference thereto, or recital thereof, in another part of the will." (Sec. 7022.) "The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained." (Sec. 7023.) "The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative " (Sec. 7024.) "Of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy." (Sec. 7025.) "A condition precedent in a will is to be deemed performed when the testators' intention has been substantially, though not literally, complied with." (Sec. 7047.)

"Date" is derived from the Latin word *datum* meaning "given". The English word "date" and its Latin derivative *datum* have a historical background. In England prior to 1731 instruments of writing, particularly legal documents, such as

deeds and wills, were in Latin and that part thereof giving the place or the time or giving both the time and place when and where the instrument was made became known as the *datum clause* because the Latin form ran *datum* etc. Thus *Datum apud London* means, Given at London. The plural of *datum* is *data*. The Magna Charta, written in Latin, concludes with the *datum* clause, or *data*, or date, viz.: "*Data per manum nostram, in Prato quod vocatur Runimede*," etc. Thus has the Latin *datum* clause, being the English "date," acquired a peculiarly appropriate meaning in law and the legislature has commanded that such word "be construed according to such peculiar and appropriate meaning." (Sec. 15, Rev. Codes.)

Anderson's Dictionary of Law defines the word "date" thus: "The primary signification is the time 'given' or specified,—in some way ascertained and fixed. The time when an instrument was made, acknowledged, delivered or recorded; the clause or memorandum which specifies that fact; and the time from which its operation is to be reckoned." (See, also, "Date" in Abbott's Law Dictionary, page 338.)

The Century Dictionary and Cyclopedia defines the noun "date" thus: "That part of a writing or inscription which purports to specify the time when, and usually the place where, it was executed. A full date includes the place, day, month and year; but in some cases the date may consist of only one or two of these particulars, as the year on a coin. * * *."

The Supreme Court of the United States, speaking through Mr. Justice Sutherland, said: "The word 'date' is used frequently to designate the actual time when an event takes place, but, as applied to written instruments, its primary signification is the time specified therein. Indeed this is the meaning which its derivation (*datus*—given) most naturally suggests. In *Bement* v. *Trenton Locomotive & Mach. Mfg. Co.*, 32 N. J. L. 513, 515, 516, it is said: 'The primary signification of the word "*date*" is not time in the abstract nor time taken absolutely, but, as its derivation plainly indicates, time "*given*" or specified,

time in some way ascertained and fixed; this is the sense in which the word is commonly used. When we speak of the date of a deed, we do not mean the time it was actually executed, but the time of its execution, as given or stated in the deed itself. The date of an item, or of a charge in a book account, is not necessarily the time when the article charged was, in fact, furnished, but simply the time given or set down in the account, in connection with such charge.' " (*Mutual Life Ins. Co. of New York* v. *Hurni Packing Co.*, 263 U. S. 167, 174, 44 S. Ct. 90, 91, 68 L. Ed. 235, 31 A. L. R. 102.)

In *Shaughnessey* v. *Lewis*, 130 Mass. 355, the court said:

"It would be a very harsh as well as unnatural construction of the statute to suppose that the Legislature meant to make void as against the world an instrument which, in one of the various modes in which mistakes in the Calendar occur, happens to be misdated. It is common knowledge that at the commencement of the year instruments are frequently antedated a year. It often occurs that such instrument carries with it conclusive evidence of a mistake in the date. Such evidence does not, however, change the words of the date.

"We need not resort to the etymology of the word 'date' to arrive at this conclusion, although the technical signification of *datum* would import the execution of the instrument, rather than figures of month or year. In *Folsom* v. *Clemence*, 111 Mass. 273, the law is stated with exact accuracy. In that case, there was no date of a mortgage except it was dated 1870 without month or day of the month, but on its back was written, 'March 24, 1870;' in reference to which it is said by the court that 'the evidence tended to show that to have been the time of its delivery, which is the true date.' "

Funk & Wagnalls New Standard Dictionary (1942) defines the verb "date" thus: "To mark with a date, as a letter or deed. To assign a date to; as, Gibbon *dates* that event too early. To use some event or period as a basis in noting time; reckon. To have existed from a given date: with *from;* as Protestantism

*dates* from 1517. The triumphant establishment of the Copernican doctrine *dates* from the invention of the telescope. Draper. To bear a date; as, the bill *dates* from London.''

Generally speaking, a date is not necessary to the validity of an instrument unless it is required by statute. ''And the date of a deed is not of the substance of a deed.'' (*Goddard* v. *Denton*, 2 Coke (Eng.) 4b; *Jackson ex dem. Hardenberg* v. *Schoonmaker*, 2 Johns., N. Y., 230.) ''But the ancient deeds had no dates, only of the month and the year, to signify that they were not made in haste, or in the space of a day; but upon longer and more mature deliberation. (Blount's Law Dict.)'' (Jacobs Law Dict. title, ''Date.'')

In section 6980, Revised Codes of Montana, the legislature has set forth the requirements for the execution of all wills other than holographic and nuncupative wills, but nowhere has the legislature required that such wills show either the place where they are made or the year or the month or the day of the month when same are executed. Thus the *datum* clause or the date clause is no part of such wills as are executed pursuant to section 6980, Revised Codes.

Clearly the legislature has the authority to require, by legislative enactment, that to be valid, a holographic will must specifically set forth the day of the month of its execution, but as yet, the legislature has not exercised such authority. It has not enacted any such specific requirement. In the absence of such legislative enactment the courts most certainly do not have the authority to invade the field reserved for the legislative department and to legislate such specific requirement into a most general statute which never did contain and which was never intended to contain any such specification. (Constitutional Law, 11 Am. Jur. sec. 198, pp. 900, 901.) ''The powers of the government of this state are divided into three distinct departments: The legislative, executive, and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers

properly belonging to either of the others, except as in this constitution expressly directed or permitted." (Constitution of Montana, Art. IV.)

Nowhere has the Constitution "expressly directed or permitted" this court to restrict, amend or in any wise alter the simple and clear definition of a holographic will given by the legislature in section 6981, Revised Codes. The power to define is the power to legislate. The power to legislate is vested in the legislative assembly (Montana Constitution, Art. V, sec. 1) and not in the courts (Id. Art. IV). The legislature has the authority by proper enactment to prescribe that a holographic writing which "does not bear the day of the month of the execution thereof" shall be invalid and denied probate, but in the absence of such enactment by the legislature the courts have no authority to amend and restrict the plain and simple language of section 6981, Revised Codes, by reading such last quoted words into the statute. Since 1877 has this general statute stood as the law of this state without reading into it any "day of the month" requirement, and if the statute is to be amended by inserting therein such specific requirement, such amendment should come in the regular manner through the legislative assembly.

The word "date" when spoken may sound somewhat similar to the word "day" but the words are certainly not synonymous nor do they have a common source or derivation, and the statutory definition setting forth that such date as is given a holographic will is to be written by the hand of the testator himself does not warrant a construction by the courts which invalidates and denies probate to a testamentary writing wherein the testatrix has clearly set forth and given by her own hand a date consisting of the year and the month of its execution but wherein she did not give the day nor the hour when she affixed her signature thereto.

The legislature recognized that a holographic will may be most informal so long as the writing is all done by the hand of the testator alone, so long as he signs it in some fashion, and so

long as, in his own handwriting, he gives some *data,* figures or markings indicating the time when it was given or from which its operation is to be reckoned. The legislature expressly provided: "It is subject to no other form." (Sec. 6981, Rev. Codes.)

To be valid, a holographic will need not be full and complete as to form, as to writing, as to signature, nor as to date. It is strictly up to the testator as to whether he shall use few or many words; as to whether he shall follow a legal form or disregard all forms and draft his will in his own language and fashion; as to whether he sign his name in full or by initials or by a nickname, and, finally, as to whether he shall write a full, complete and formal *datum* clause such as concludes the Constitution of the United States, or whether he shall be more brief and shorten his *data* or date to a simple memorandum which gives only the year and the month of execution.

In *Bailey* v. *Teackle,* 1793, Wythe, Va., 173, the court sustained as a holographic will a writing which bore no signature except, "i Richard Drummond of Accomack county, * * * do make and ordain this my last will and testament" etc., at the beginning and was dated thus: "In testimony whereof i have hereunto set my hand and affixed my seal, this ............ day of April, in the year of our lord 1744." In *Webster* v. *Lowe,* 1899, 107 Ky. 293, 53 S. W. 1030, 1031, the court admitted, as a holographic will, a writing which bore no date whatever, saying: "To the validity of a will, the law does not require it should assume any particular form, or that any technically appropriate language should be used therein if the intention of the maker is disclosed, and the destination of his property at his death is described." In *Yount* v. *Hail (In re Estate of Hail),* 1923, 106 Okl. 124, 235 Pac. 916, the court sustained as a holographic will a writing bearing date "November. 1919," thus setting forth no day of the month whatever.

Clearly the validity of a holographic will is not dependent upon its formal character nor upon the fullness and com-

pleteness of its every detail. "An absolute precision of execution is not expected in the case of an holographic will." (*In re McMahon's Estate,* 174 Cal. 423, 163 Pac. 669, 670, L. R. A. 1917D, 778.) "The validity of such a will owes its origin to the fact that a successful counterfeit of another's handwriting is exceedingly difficult, and that therefore the requirements that it should be in the testator's handwriting would afford protection against a forgery of this character. * * * It is sufficient if the writing expresses, however informally, a testamentary purpose in language sufficiently clear to be understood, * * * Amounts may be stated in figures as well as words, and customary abbreviations may be used." (28 R. C. L. sec. 116, p. 161.) "Signature by an abbreviation, or by initials, or the word 'Father' if intended as a signature, or 'Mother,' or by a nickname, is sufficient." (1 Page on Wills, 3d Ed., sec. 389, p. 704.) Holographic wills bearing the following signatures have been held to fully meet the statutory requirements, viz.: "from a loving Mother" (*In re Henderson's Estate,* 196 Cal. 623, 238 Pac. 938); signed, "your brother Ed" (*Barnes* v. *Horne,* Tex. Civ. App., 233 S. W. 859), and signed only with the initials "E. M. P." (*Pilcher* v. *Pilcher,* 117 Va. 356, 84 S. E. 667.)

"It is a very common thing for men to commence a letter or other document on one day, and to finish it on the next or some subsequent day; and in such case the date, whether written at the beginning, as is usually the case, or at the end, as is sometimes done, is, according to the common and received usage of language, the proper date of the writing; and this is equally true of legal documents, though these do not take effect until completed and delivered." (*In re Clisby's Estate,* 145 Cal. 407, 78 Pac. 964, 104 Am. St. Rep. 58.)

The courts have likewise held that a wrong date or even an impossible date given in a holographic will does not invalidate it as where the year "1880" was used instead of "1890" (*Barney* v. *Hayes,* 11 Mont. 99, 27 Pac. 384; Id., 11 Mont. 571, 29 Pac.

282, 28 Am. St. Rep. 495) ; and the figures "1859" were used instead of "1889." (*In re Fay's Estate,* 145 Cal. 82, 78 Pac. 340, 104 Am. St. Rep. 17.) In *Doran* v. *Mullen,* 78 Ill. 342, the appellate court sustained a will that bore date after the death of the testator, and in *In re Wilkinson's Estate,* 113 Cal. App. 645, 298 Pac. 1037, the will was held sufficient where the words, "December Fourth, *nine* hundred and twenty eight" were used instead of "December 4th, 1928," being an error of an even 1,000 years.

Under the law Belle Irvine was privileged to make her will on any of the 365 days of the year. On none of such days did the law prohibit her from making a testamentary disposition of her property. The law permitted her to execute her will on "this last day of May, 1938," "this May day, 1938," "this Mother's Day, 1938," "this Memorial Day, 1938" or any other of the various days that went to make up the month of May, 1938. It is not even necessary that a holographic will be written at one time or even on one day. (*In re Clisby's Estate,* supra.)

This court in *In re Noyes' Estate,* supra, quoted as follows from *In re Estate of Fay,* 145 Cal. 82, 78 Pac. 340, 104 Am. St. Rep. 17 : "The date is not the material thing, although made necessary by the statute. It is a means of identification, and aids in determining the authenticity of the will; but the main and essential thing is that the will be wholly written and signed by the hand of the testator."

When courts recognize, as they must, that "the date is not the material thing", why should they quibble over the effect of omitting the day of the month from a will, wherein the testatrix has written, by her own hand, the year and the month of the execution? The statute does not require that the date given in a holographic will be a formal or a full or a complete date giving the exact place where and the exact time to the day and hour when the will was executed. "Such holographic will need not be in any particular form. * * * If the decedent's intention is clear, that intent must not be ignored because the language is

not technical. '' (*Barney* v. *Hayes*, 11 Mont. 571, 29 Pac. 282, 284, 28 Am. St. Rep. 495.)

The precise question here presented has not heretofore been passed upon by this court. In volume 1, Page on Wills, 3d Ed., p. 702, it is recognized that courts from other jurisdictions have held both for and against validity, saying: ''If the date gives the year and the month, but without the day of the month, some courts have held that it is insufficient; while others have held that it is sufficient.''

We are not unmindful of the numerous court decisions wherein the courts have refused to admit holographic writings to probate unless they were first shown to be ''letter and figure perfect,'' but this court will not blindly follow the construction given a particular statute by the courts of another state, especially when such construction or decision does not appeal to us as founded on right reasoning. (*Ancient Order of Hibernians* v. *Sparrow*, 29 Mont. 132, 74 Pac. 197, 64 L. R. A. 128, 101 Am. St. Rep. 563, 1 Ann. Cas. 144.) Furthermore, we have noted that the very courts which insist on denying probate to all holographic wills which omit to give the day of the month of execution hold that it is wholly immaterial whether the day given be the correct day or not. Such courts seem content with any given day,—right, wrong or even impossible, just so long as some day is set forth. Why this idle, meaningless worship of form, which serves only to defeat the intention of both the legislature and of the maker of the will?

By adopting a technical and strict, rather than a reasonable, interpretation of a general statute which gives but a general definition of a holographic will, some courts have, in effect, by judicial interpretation, read into the statute, after the word *dated,* the words ''including the day, the month and the year of the execution thereof.'' (*In re Estate of Vance,* 174 Cal. 122, 162 Pac. 103, L. R. A. 1917C, 479.) That great injustice has resulted from this judge-made law has long been recognized and the courts have made repeated appeals to the legislature

to enact legislation which will permit an abandonment of the strict and unjust "letter and figure perfect" rule which the courts and not the legislature brought into being. In 1923, in his concurring opinion, in the case of *In re Estate of Francis*, 191 Cal. 600, 217 Pac. 746, Mr. Justice Louis Myers, afterwards Chief Justice, said: "I concur solely because I must agree that this case is ruled by the decision in [*Re*] *Estate of Thorn* [183 Cal. 512, 192 Pac. 19], and *if a change is to be made in the rule as there announced it should be by legislative enactment.*" In 1936, Presiding Justice Crail, following the rule, but recognizing its unsoundness, said in *In re Maguire's Estate*, 14 Cal. App. (2d) 388, 58 Pac. (2d) 209, 210:

"If the matter had not already been decided in California and become a rule of property, we would be inclined to hold otherwise. * * * But this court is not the Supreme Court of the state of California and it is the duty of this court to follow the law as it is interpreted by that court. * * * Grief and disappointment are often caused to those depending upon holographic wills by the law as it now exists. A tragic illustration was the will of June Mathis, Los Angeles superior court, No. 90235. It may be that some time in the future the Legislature will make an additional amendment to the section to the effect that no date is necessary provided the approximate time of the execution of the will is proved and that the testator was competent to make a will during all the time within the limits of said approximation." This court has not as yet adopted the "letter and figure" perfect rule as to the date of holographic wills, hence there is no need for us as yet to appeal to the Legislature to relieve us from the consequences of our own folly in promulgating and adopting a judge-made rule which is harsh, unreasonable and which invaded the field reserved for the legislative department of our government in violation of Article IV of the Constitution.

"Law is supposed to be the perfection of reason, and any rule which either offends against every dictate of common

sense, or defeats the very object of the provision to which it is applied, ought not to be adopted." (*State ex rel. Hay* v. *Alderson*, 49 Mont. 387, 142 Pac. 210, 216, Ann. Cas. 1916B, 39.) "When the reason of a rule ceases, so should the rule itself." (Sec. 8739, Rev. Codes.)

In construing statutes and provisions of the Codes and "to aid in their just application" (sec. 8738, Rev. Codes), we are commanded by the legislature of this state to make our interpretation reasonable (sec. 8771, Id.), so as to give effect and not to make void (sec. 8770, Id.)

The territorial legislature of Montana, in 1877, recognized the validity of holographic wills by the enactment into law of what is now sections 6981 and 10031 of the Revised Codes. Four years later (1881), the Supreme Court of California decided the case, *In re Estate of Martin*, 58 Cal. 530, wherein is adopted the strict rule of construction since followed by the courts of that state. These decisions occurring subsequent to the enactment of our statute are entitled to respectful consideration, but we are not bound by them. (*Ancient Order of Hibernians* v. *Sparrow*, supra.)

The law of this state expressly permits a person, without the assistance of an attorney at law, or any one else, to make a valid testamentary disposition of his property. The question is not whether attorneys and courts approve of holographic wills. The law of this state approves and for over sixty-six years it has approved of such wills. Courts therefore have no right to apply a strict and unreasonable construction to such informal writings, and, by seizing upon immaterial technicalities, declare them invalid, thereby defeating not only the will of the deceased person, but also that of the legislature.

The record here shows that Belle B. Irvine endeavored to comply with the law. She endeavored to avail herself of the privilege of section 6981, Revised Codes, and, thereunder, to dispose of her property according to her desires. The writing she made for this purpose is entirely written by her hand.

Three times, she wrote her name in the document. She signed it. To give to it a date she wrote: "In witness where of I have hereunto set my hand this day of May, 1938, Belle B. Irvine." What does the law say about these words so written by the deceased in her will? "The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative." (Sec. 7024, Rev. Codes.) Thus are the courts commanded by the legislature to give to these words an interpretation that will give some effect to them rather than to so interpret them as to render them inoperative. When there are presented two modes of interpreting a will, the legislature has said "that is to be preferred which will prevent a total intestacy". (Sec. 7025.) As to the meaning of the words "In witness whereof" used by decedent, Ballentine's Law Dictionary gives: "A formal expression commonly used at the beginning of the attestation clause of any signed instrument." The words "I have hereunto set my hand" simply mean that decedent was declaring, publishing and authenticating her writing by setting, in her own hand, her name or signature thereto. By writing the words "this day of May, 1938" in the clause the decedent thereby placed in her writing a *datum* clause giving the data as to the time when her writing was done. She gave the month and the year of execution. She dated it. Thereby she substantially complied with the statute. (Sec. 6981, Rev. Codes.)

This writing became and was Belle B. Irvine's "just sentence" of her will touching what she would have done after her death. (*Barney* v. *Hayes*, 11 Mont. 571, 29 Pac. 282, 28 Am. St. Rep. 495.) Such solemn writing is entitled to the respect of the courts. It constitutes a valid holographic will and is entitled to be admitted to probate. Thereby is done the will of the legislature and also the will of Belle B. Irvine.

Order reversed.

Mr. Justice Erickson concurs.

MR. JUSTICE MORRIS:

I concur in the result, but not in all that is said in the majority opinion.

My concurrence in the result is based upon the ground that the essential functions the date of a will performs are (1) If more than one will is presented for the probate of an estate, the date of the wills must determine which was the last made; (2) If the question of the testator's mental capacity is raised, the date of execution may become important. For instance, if the testatrix' mental capacity were made an issue in the case at bar, and it were established that during the entire month of May, 1938, she was of sound mind, the date as to that question would be of no importance. Neither of these questions is involved in this case, and for that reason the day of the month became immaterial.

MR. CHIEF JUSTICE JOHNSON:

I dissent from the result reached by the majority, and am glad that in attaining that result they do not agree upon their reasons, which are separately stated in the first and second opinions above, and that they therefore dispose of the case without changing the law. It is essential that the latter fact be made clear.

Our statute provides that holographic wills must be "entirely written, dated, and signed by the hand of the testator." As shown below, "dated" means, "bearing date," which with regard to a will or other document the validity, and time and conditions of execution of which are often peculiarly important, is universally defined as requiring an identification of the day on which it was executed. That day is usually identified by the ordinary designation of year, month and day, but may be designated by any other method which does so with reasonable certainty. Such examples, as correctly suggested in the first opinion above, are " 'this last day of May, 1938,' 'this May day, 1938,' 'this Mothers' Day, 1938,' or any other of the various days that went to make up the month of May, 1938;" but not

"this day of May, 1938," which identifies none of them. By those examples even the first opinion perforce recognizes the legislative intent that "dated" means nothing less than indicating the *day* of execution.

On the other hand, it is too well recognized to require citation of authority that the right to make wills is not an inherent one but depends entirely on legislative authority, and that the statutory requirements are not merely directory but mandatory and must be substantially complied with.

Nevertheless, the first opinion above holds, without reasoning or authority, but only upon the *ipse dixit* of its signers, that "dated" means, bearing *data, datum* or a *datum clause,* or only some one or two of the three elements of year, month and day necessary to show the date; and the second opinion holds, equally without reasoning or authority, that unless certain questions arise with regard to the will, the requirement that a will be dated is not mandatory but may be ignored; thus in effect adding to the Act a proviso which the legislature failed to state or even to suggest.

It is a well known saying that hard cases make bad law, meaning that the sympathies of judges sometimes tend to interfere with their impartial application of legal rules, as where the natural disappointment of a prospective legatee is permitted to obscure the fact that the document has not been executed as required by statute and therefore does not constitute a will. However, in the great majority of cases the courts suppress those sympathies in order to keep our government one of laws and not of men. One such case is *In re Maguire's Estate*, 14 Cal. App. (2d) 388, 58 Pac. (2d) 209, 210, in which, as quoted for some inexplicable reason in the first opinion above, the California court referred to the fact that "grief and disappointment are often caused to those depending upon holographic wills *by the law as it now exists.*" But that court refused to usurp the legislative function, and said: "It may be that some time in the future *the Legislature* will make an additional

amendment to the section to the effect that no date is necessary provided the approximate time of the execution of the will is proved and that the testator was competent to make a will during all the time within the limits of said approximation.''

The California court recognized but expressly refused to adopt either of the only two possible ways of evading the statutory requirement that holographic wills be dated:—the one adopted by the first opinion above, construing away the word ''dated;'' and the one adopted by the second opinion above, eliminating the absolute statutory requirement whenever the court may consider it unnecessary. If the latter is correct, the courts may eliminate the requirement of two witnesses for ordinary wills, where it considers that one witness should be sufficient.

This is not a hard case, for the estate is of less than $100, ''subject, however to a trust,'' the nature, extent and conditions of which are not stated. If there is any greater equity in favor of the legatee and beneficiary here, as against the heirs at law, than in any other of the usual cases in which a document fails to possess the statutory elements required to constitute a will, it does not appear in the record.

In any event, because the majority do not agree upon their reasons this case makes no bad law, but merely effects a small redistribution of wealth, taking it from the heirs at law who are entitled to it under our laws of descent, and giving it to those who are not entitled to it under our law of holographic wills. No authority is given for that result, and no plausible reason for a result so diametrically opposed to the unanimous authorities is even suggested.

It is significant that the first opinion above does not attempt to cite any decision holding that ''dated'' as applied to a will means less than year, month and day. It says that in *Bailey* v. *Teackle*, a Virginia case decided a century and a half ago, a document was held good as a holographic will which resembled the present one in bearing, not a date, but only the expression

"This day of April, in the year of our Lord 1744." Coming up into the last half century, it cites *Webster* v. *Lowe,* 107 Ky. 293, 53 S. W. 1030, 1031, as one in which "A writing which bore no date whatever" was held good as a holographic will. In fairness to the Virginia and Kentucky courts, it should be stated that they were not rebelling against legislative requirements that wills be dated, since the statutes of Virginia and Kentucky did not make that requirement. Consequently neither case is even remotely in point.

The only other case cited on the point by the first opinion is that of *Yount* v. *Hail* (*In re Hail's Estate*), 106 Okl. 124, 235 Pac. 916, 919, in which the court sustained as a holographic will a document bearing no date, but only the expression "November, 1919." In that opinion the court did not define the word "dated" as requiring only month and year. It admitted that the authorities were unanimously against such definition. However, after referring generally to what it condemned as a "letter and figure perfect" rule,—the requirement that a will be dated when the statute so provides,—the court said: "Oklahoma is inclined to the liberal construction or substantial compliance rule," and proceeded to hold that, *for the purposes of that case only,* the expression "November, 1919" was "a substantial compliance" with the statute, ignoring the fact that failure to "date" the document is no more a substantial compliance than a failure to write or sign it.

The *Hail* decision expressly declined to lay down any general rule that expressions of the kind constitute a substantial compliance with the statute or that the definition of "dated" was other than as universally accepted, for the court definitely disowned any attempt to establish such a precedent. The decision concluded: "It is not intended, however, by this decision to announce the conclusion here reached *as a rule* by which to measure the sufficiency of the date or signature of any other holographic will than the one here involved. The construction to be placed upon our statute governing this class of wills is left

open for determination wherever its construction is *more imperatively demanded* by the facts of some particular case, * * *.''

While it is not apparent how the construction of the statute could ever be *more imperatively demanded* than it was in that case, nevertheless the Oklahoma court expressly negatived any intent to construe it or to enunciate the rule that a will is ''dated'' without bearing the date of its execution. It expressly said that it was merely clearing the track for the will in question, reserving the right to turn the switch the other way when the question arose again. In view of that court's characterization of the universal rule as the ''letter and figure perfect rule,'' we might perhaps designate the Oklahoma decision in question as adopting the ''deuces wild rule.'' In fairness to that court it should be pointed out that the decision is shown as a ''Commissioner's Opinion, Division No. 1,'' which indicates that a situation may have existed making it physically impossible for the entire court adequately to consider the case, in spite of the fact that two successive petitions for rehearing were filed. But whatever the possible justification or excuse for a decision of that kind, the express disavowal of the intention to adopt a rule applicable to other similar or even identical cases completely destroys any weight it might otherwise have had as a precedent; and although it was rendered nearly twenty years ago we do not find that the Oklahoma court has ever followed it. On the contrary, that court, in *Re Abrams' Will,* 182 Okl. 215, 77 Pac. (2d) 101, 102, expressly refused to apply or extend the *Hail Estate* decision. In the *Abrams Case* it was argued that since in the *Hail Estate Case* ''November 1919,'' with the day of the month omitted, was held a substantial compliance with the requirement that holographic wills be dated, a similar document entirely lacking any element of a date was likewise a substantial compliance. Since the *Hail Estate* decision entirely defeated the purpose of the statutory requirement of a date, the argument was plausible enough. But the court refused to follow it as a precedent, saying with regard to that decision:

"* * * The authorities are reviewed at length, and no case is cited where, under a statute requiring a holographic will to be dated, such a will was admitted to probate that did not contain the month, day and year. It is the only case to which our attention has been called, or that we have found, that, under a statute like ours, holds that a date on a holographic will is sufficient where only the month or year are given. The decisions from the other states having statutes requiring that such a will be dated are to the contrary. (68 C. J. 720, and authorities cited in note 2; *In re Love's Estate*, 1930, 75 Utah 342, 285 Pac. 299; *In re Vance's Estate*, 1916, 174 Cal. 122, 162 Pac. 103, L. R. A. 1917C, 479; *Montague* v. *Street*, 1930, 59 N. D. 618, 231 N. W. 728; *Heffner* v. *Heffner*, 1896, 48 La. Ann. 1088, 20 So. 281, 282.)

"In the case of *Montague* v. *Street*, 1930, N. D., supra, the court reviewed at length the authorities and discussed, but refused to follow, the *Hail* decision, and, under a statute identical with ours, held invalid a holographic will that omitted from the date the day of the month. The court called attention to the language used in the last paragraph of the opinion in the *Hail Case* to the effect that it is not to be used as a precedent as to any other holographic will."

Thus whatever authority the *Hail Estate Case* may ever have supplied, it has been expressly repudiated by the Supreme Court of Oklahoma.

Except for such a decision as that in the *Hail Case*, which disposes of the controversy at hand while expressly refusing to follow or to enunciate any rule, the only way to decide a case is the right way, namely, by finding the rule, and by proceeding to apply it to the facts of the case presented.

The rule as laid down in the California, Oklahoma, Utah, Louisiana and North Dakota cases, is that followed without exception among courts of record,—that "dated" as applied to wills requires all three elements of a date, namely, year, month and day. The word "date," of which "dated" is the

past participle, is defined by Webster's New International Dictionary (2d Ed.) as follows: "To note the time of writing or executing; to express (in an instrument) the time of its execution."

In *In re Price's Estate,* 14 Cal. App. 462, 112 Pac. 482, 483, the court said: "The term 'date,' in its common and accepted signification, means the 'day, month, and year' (see Century Dictionary, the Encyclopaedic Dictionary, and Bouvier's Law Dictionary), and we can perceive no sound reason that would or could prompt the Legislature in using the term in any other sense when making it one of the essentials of a legal instrument in writing of any character. If the 'year' alone shall be held to be sufficient to satisfy the statute as to the date of an holographic will, we can see no good reason why the 'day' or the 'month' only would not likewise be sufficient to meet the requirements of the statute in respect of the date, between which and the other requisites of such a testament we can discover no difference in importance."

That definition is not merely the majority one, but the only one. Volume 68 of Corpus Juris, p. 720, section 403, says that, with a certain exception hereinafter noted, "it is generally held that the 'date' required includes the year, month, and day, and that if any one of these is wanting the will is invalid, and where any part of the date is doubtful or uncertain, whether as to the day, month, or year, the instrument will fail as a holographic will." Page on Wills, 3d Ed., pp. 700-702, section 388, says: "If the statutes which regulate the holographic will provide that it must be dated, such a will is invalid if not dated. In order that the will may be valid, the date must show the year, month and day. * * * If the date gives the year and the month, but without the day of the month, some courts have held that such date is insufficient, while others have held that it is sufficient." The only case cited by Page as authority for the last clause of the quotation is *In re Hail's Estate,* supra, and it is the only one cited by Corpus Juris to the same effect. In

600

substantiation of the majority rule both authorities cite cases from California, Louisiana, North Dakota and Utah. All the cases cited in the American Digest System, so far as we have been able to find, are absolutely unanimous in holding that year, month and day are necessary to constitute a date, that if any of them is missing the document is not entitled to admission as a holographic will (*Succession of Wenling*, 172 La. 673, 135 So. 21; *Montague* v. *Street*, N. D., supra; *In re Love's Estate*, Utah, supra; *In re Vance's Estate*, Cal., supra); that so much of the date must be in the testator's writing as to make the date certain after disregarding the part not in his writing (*Succession of Heinemann*, 172 La. 1057, 136 So. 51); if not, it is insufficient (*In re Estate of Billings*, 64 Cal. 427, 1 Pac. 701; *In re Yowell's Estate*, 75 Utah 312, 285 Pac. 285; *In re Noyes' Estate*, 40 Mont. 190, 105 Pac. 1017); there is authority also that the omission of a date on the document cannot be supplied by evidence *aliunde*. (*In re Abrams' Will*, Okl., supra; *In re Noyes' Estate*, Mont., supra.)

The rule of liberal construction does not excuse the lack of substantial compliance with the statutory requirement that a holographic will must be dated. (*In re Carpenter's Estate*, 172 Cal. 268, 156 Pac. 464, L. R. A. 1916E, 498.) The provision of section 4, Revised Codes, that statutes are to be "liberally construed" with a view to effect their objects and to promote justice does not mean that the express provisions of other statutes are to be made meaningless, nor does it mean that the disappointments of those who lose because the statutory requirements have not been performed are to outweigh the disappointments of those who in the absence of such performance are entitled to take under the intestacy statutes; for the purely statutory right to make a will does not confer such equities upon testator or legatee that justice requires the courts to overrule the express statutory requirements with which the grant of privilege is joined.

While *Corpus Juris* refers to the minority rule as that of

"liberal construction," the question is not one of construction at all. It is simply whether the word "dated," as universally applied for obvious reason to documents of this kind, shall be made meaningless and for all practical purposes be read out of the Act. The issue of strict or liberal construction enters in when the question is whether the attempted designation of a date is sufficient, as where an abbreviation is used, or where there is an obvious error, or where the date given could not actually have been the date on which the paper was in fact written. Since the statutory requirement that the document be dated is not purely formal but has a purpose, the fulfilment of which does not depend upon formality, the courts with few exceptions uniformly follow the rule of liberal construction and hold that the date is sufficiently designated if it can be ascertained with reasonable certainty from the matter appearing in the hand-writing of the testator, without recourse to other material which the courts are necessarily precluded by the statute from considering.

The courts have, with few exceptions, followed the rule of liberal construction in holding that any designation is sufficient which fixes the date with reasonable certainty. Thus the following have been held valid as dates in holographic wills: "Oct. 12/24" (*Succession of Coleman,* 177 La. 898, 149 So. 513); "April" on first line and "20-1930" on second line (*Succession of Sutherland,* 181 La. 1011, 160 So. 794; "4-14-07" (*In re Chevallier's Estate,* 159 Cal. 161, 113 Pac. 130); "Nov. 22 '97." (*In re Lakemeyer's Estate,* 135 Cal. 28, 66 Pac. 961, 87 Am. St. Rep. 96.) In each of those instances a definite date was stated with reasonable certainty. The first opinion above suggests others, like "May Day, 1939," "Mothers' Day, 1939," etc.

Thus the rules of liberal interpretation and substantial compliance have usually been followed and the date held sufficient whenever it could be determined with reasonable certainty from the matter in testator's hand-writing. On the other hand, when-

ever the date could not be so determined with any certainty, it has necessarily been held that the statutory requirement was not substantially fulfilled. Thus, in view of the local differences in custom among different persons in designating either the month or the day first, "12. 10. 1934" was held insufficient, since it could mean either December 10th or October 12th. (*Succession of Lasseigne,* La. App., 181 So. 879.) Another insufficient designation of the same kind was "9/8/18." (*Succession of Beird,* 145 La. 756, 82 So. 881, 6 A. L. R. 1452.) Other designations insufficient to show day, month and year and therefore held invalid were "March Nineteen Hundred and Thirty" (*In re Maguire's Estate,* Cal. App. supra) ; "10 1912" (*In re Carpenter's Estate,* Cal., supra) ; "March 22, One Thousand" (*In re Vance's Estate,* Cal. supra) ; "............day of............, 1906" (*In re Price's Estate,* Cal., supra).

In any event, the fact that in cases of doubt or of obvious mistake in dating documents the courts have sometimes stretched the rule of liberal construction or substantial compliance almost to the breaking point, should not be seized upon as an excuse for entirely nullifying the statutory requirement where it has obviously not been substantially complied with.

One of the cases cited in the *Hail Estate Case,* supra, in support of the so-called "liberal construction rule" was *Appeal of Knox,* 131 Pa. 220, 18 Atl. 1021, 1023, 6 L. R. A. 353, 17 Am. St. Rep. 798, in which the court correctly said that there was no "fixed requirement how much of the full name shall be written" in the signature; with which, of course, we have no quarrel. However, by statute we have a "fixed requirement" that the will be *dated;* and by dictionary meaning, general usage and unvarying authority there is a "fixed requirement" that "dated" as applied to such documents includes year, month and day, so that the omission of the date, or any essential part of it, is not even a substantial compliance and cannot properly be condoned simply by characterizing the requirement as "a letter and figure perfect rule."

The requirement being mandatory that the document be signed, but the word "signed" not having any fixed requirement, a considerable latitude is properly permitted as to how the signature shall be written under the substantial compliance rule; as shown above, the same is true as to "dated," where all the elements are present to constitute a date; but where any of the essential elements to constitute a date is missing, there has not been substantial compliance, and therefore the rule gives no assistance.

The writer of the first opinion in this case does not find that the meaning of the word "dated" has been ruled upon in Montana. If it had not been ruled upon the court would still be governed in its interpretation by section 15, Revised Codes, which provides: "Words and phrases used in the codes or other statutes of Montana are construed according to the context and the approved usage of the language; but technical words and phrases, and such others as have acquired a peculiar and appropriate meaning in law, or are defined in the succeeding section as amended, are to be construed according to such peculiar and appropriate meaning or definition."

It is apparent that in the requirement that the document be dated, the word "dated" is not technical and has acquired no peculiar meaning. Certainly it has not acquired a meaning equivalent to "data" or "datum." It is therefore, under section 15, Revised Codes, to be construed according to the context and the approved usage of the word in the modern English language of today, rather than of the word "data" or "datum" in the Latin, the Norman French, or the medieval English. This is necessarily true since the statute is intended for the special guidance of present day English speaking persons, generally unacquainted with those dead languages, who desire to make their wills without legal advice or assistance and who, in so doing, must necessarily be expected to interpret the words according to ordinary, nontechnical, contemporary usage.

It is to be emphasized also that the provision that words are

to be construed according to their context means that with reference to wills the word "dated" is not to be construed as it would be in relation to coffee cans, which are perhaps sufficiently *dated* by months, or coins, which are *dated* by years, or buildings, which are *dated* by years, decades or centuries, or geological formations, which are *dated* by periods, eras or epochs. It is to be construed, not merely as to ordinary writings, whose dates of execution may or may not be important, but with special reference to their character,—personal human documents more fully described as "last wills," meaning last in point of time, and thus necessarily involving the question of the date assigned to them by the testator, which means not merely the month, year or century. A decedent may leave several documents, each purporting to be his last will and testament, but if each bears only its month and year, how can it be determined which is actually his last will and testament? The date is important also in order to deal with such possibilities as mental incompetency, physical inability, undue influence and forgery. While those considerations may probably have furnished the reason for the statutory requirement of dating, the absence of such question in this or any other case cannot change either the definition of, or the necessity for, the statutory requirement. The ordinary will is usually drawn by a lawyer, or by a testator sufficiently experienced in dealing with property and documents to understand the importance of showing the date of its execution, and practically all such wills bear date in spite of a lack of such statutory requirement. If the date should happen to be missing, the formality of execution with two witnesses ordinarily furnishes a method of supplying that lack.

But since a holographic will is to be made by the testator, ordinarily without legal advice, so that the importance of a date might not otherwise be realized, the legislatures in the states in which holographic wills are authorized, have often required that such wills be dated. There is no doubt that the right to make a will is not an inherent right but depends entirely upon legislative authorization, and that the statutory requirements are mandatory

and must be at least substantially complied with. (*In re Noyes'*
*Estate,* Mont., supra.)

The Montana decisions are not so silent upon the definition
of "date" or "dated" as the first opinion above imagines. This
court said in *State ex rel. Rowe* v. *Kehoe,* 49 Mont. 582, 144
Pac. 162, 164, "The ordinary man on the street, in referring to
the *date* of the general election, would mean, and would be under-
stood to mean, the *day* of the month on which the election happens
to occur, and not any other day."

In *In re Noyes' Estate,* supra, this court had under considera-
tion the meaning of the statutory requirement that a holographic
will must be entirely dated by the hand of the testator. In that
case the will was written upon paper bearing the printed figures
"190....," which the testator, in his own writing, preceded by
"Feb. 23" and followed by "3" so as to make the date "Feb.
23, 1903." Under statutes like section 6981, Revised Codes, it is
uniformly held that the court must disregard the parts not in the
testator's handwriting and must consider only the parts actually
written by him, including the writing inserted by him in blanks
in a printed form (*In re Bowers Estate,* 11 Cal. (2d) 180, 78
Pac. (2d) 1012; *In re Noyes' Estate,* Mont., supra); and that a
document only partly written in testator's handwriting is good
if the written provisions are complete in themselves (*In re*
*Lowrance's Will,* 199 N. C. 782, 155 S. E. 876) but not other-
wise. (*In re Yowell's Estate,* Utah, supra; Estate of Billings,
Cal., supra.) Since, without reference to the three printed
figures "190," the figure "3" in the *Noyes Will* could refer
to the third year of any decade, if indeed without the printed
figures it could be understood to refer to the last number of a
year at all, the matter in the testator's hand-writing, taken
alone, as it must be, was not sufficient to show a date and the
court therefore held that the document was not "entirely * * *
*dated* * * * by the hand of the testator himself." Assuming
that the figure "3" was intended as the last number of some
year, the proponent contended that the evidence showed 1903

as the only year possibly involved; but the court obviously declined to accept the assumption and the evidence *aliunde* the document. The correctness of its action in those respects is not before us here.

In that case the question was not expressly presented whether the word "dated" necessarily included the day as well as the month and the year, but the court was required to decide whether "Feb. 23, 3" was a *date*. Obviously the court necessarily had first to determine the meaning of "date," and found that it required all elements necessary to identify *a certain day*, as in *State ex rel. Rowe* v. *Kehoe,* supra. That determination was necessary, and if the missing element had happened to be the particular day of the year instead of the particular year which included the day, the court's decision must clearly have been the same.

A judgment is not *obiter dictum* on any question within the issues which the opinion shows the court deliberately considered. (*Spratt* v. *Helena Power Transmission Co.,* 37 Mont. 60, 94 Pac. 631; *Montana Horse Products Co.* v. *Great Northern R. Co.,* 91 Mont. 194, 7 Pac. (2d) 919; *First Nat. Bank* v. *Perrine,* 97 Mont. 262, 33 Pac. (2d) 997.)

Thus this court has at least twice interpreted the words "date" or "dated" according to the rules of statutory interpretation and their obvious ordinary meaning; and those decisions should not be overruled without express reference, or without reason or citation of authority.

The first opinion in this case refers to this court's decision in *In re Noyes' Estate,* supra, as quoting, supposedly with approval, the following language from *In re Fay's Estate,* 145 Cal. 82, 78 Pac. 340, 341, 104 Am. St. Rep. 17: "The date is not the material thing although made necessary by the statute. It is a means of identification, and aids in determining the authenticity of the will; but the main and essential thing is that the will be wholly written and signed by the hand of the testator."

Far from approving the quotation, this court quoted it only

to express disapproval; for it next proceeded to quote the commentator's statement (104 Am. St. Rep. 29) in disagreement with the quotation, and then said: "With this [the commentator's] statement we agree. The requirement of the statute as to the date is not less mandatory than is the requirement as to signing, and it is not for the courts to say that either may be omitted without defeating the intention of the testator, though [the intention is] clearly expressed in the body of the writing.'"

It is of course true, as said in the first opinion in this case, that "in the statutes of our state referring to holographic wills we find no mention whatever of incorporation in the instrument of *the day of the month* of the execution thereof." It is equally true that we find no mention whatever of the month of the year or the year of the century. We do, however, find the requirement that the will be "dated," which is universally defined with reference to wills as requiring day as well as month and year.

It is further said in the first opinion that section 6981 contemplates three things, one of which is the "datum clause.'" The expression "datum" or "datum clause" nowhere appears in the section. What is required is not a Latin, Anglo-French or medieval English *datum* or *datum clause*. The requirement is that the will be *dated* as that word is universally accepted and understood in modern times with regard to wills, and not that it bear *datum* or a *datum clause*.

As we have seen in *Re Noyes' Estate,* supra, this court thirty-five years ago adopted the two universal rules with which the first and second opinions above separately take issue; namely, that "dated" means showing day, month and year; and that the statutory requirement is not merely directory but is mandatory and must be substantially complied with regardless of the circumstances, no exception appearing in the statute. The legislature has had numerous opportunities during the intervening thirty-five years to amend the statute in either or both respects if so inclined.

There is absolutely no authority in the books for a departure from either of these rules and no valid reason has been suggested for overturning them. The result reached is therefore wrong, regrettable as it may be that the testatrix' possible intention is defeated by her failure to observe the statutory requirements. As the Oklahoma court said in *Re Abrams' Will,* supra, in which it refused to follow or extend the *Hail Estate* decision, which is the only one relied upon by the first opinion above, "It is to be regretted that the intention of the testatrix is defeated by her failure to observe the statutory requirements, but to hold otherwise would in effect be to let down the bars to evils against which the statutory provisions are aimed." Among the greatest of those evils is the substitution of a government of men for a government of laws, by the unconstitutional judicial usurpation of legislative power in place of the constitutionally authorized fair judicial interpretation of legislative enactments.

MR. JUSTICE ANDERSON:

I concur in the dissenting opinion of MR. CHIEF JUSTICE JOHNSON.